LOUISE & CO. ET AL. *v.* UNITED STATES (No. 1909).[1]

1. CONSTRUCTION, SUBSECTION 4 OF PARAGRAPH J, SECTION 4, TARIFF ACT OF 1913—
    "FOR USE AS MODELS * * *, AND NOT FOR SALE."
    The expressions in subsection 4 of paragraph J, section 4, tariff act of 1913, "for use as models" and "not for sale" are employed in contradistinction to each other. If imported for sale, the statute implies that they would not be used as models, and, if imported for use as models, they would not be for sale, that is, for present sale and not imported primarily for that purpose. The words "not for sale" imply a condition of mind, and that condition relates to the date of importation.

2. MODELS OF WOMEN'S WEARING APPAREL IMPORTED AND USED AS MODELS AND
    THEN SOLD ABROAD.
    Models of women's wearing apparel imported and used as models in importers' manufacturing establishments and sold abroad and exported within six months are

---

[1] T. D. 37669 (34 Treas. Dec., 512).

entitled to free entry under subsection 4 of paragraph J, section 4, tariff act of 1913, as having been imported "for use as models * * *, and not for sale."

## United States Court of Customs Appeals, May 31, 1918.

APPEAL from Board of United States General Appraisers, G. A. 8151 (T. D. 37590).

[Reversed.]

*Brooks & Brooks (Frederick W. Brooks, jr.*, of counsel) for appellants.

*Bert Hanson*, Assistant Attorney General (*Irving Washburn*, special attorney. of counsel), for the United States.

[Oral argument May 16, 1918, by Mr. Frederick W. Brooks, jr., and Mr. Hanson ]

Before MONTGOMERY, SMITH, BARBER, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

Two cases are involved in this appeal. One is that of Louise & Co., who imported certain hats, giving a bond for their exportation according to the terms of subsection 4 of paragraph J, section 4, of the tariff act of 1913. They were used for a time as models in the manufacturing establishment of the importers, the precise length of time not appearing by the record, but within the six months' period fixed by the condition of the bond were offered for export free of duty. Free export was refused and duty was assessed on the goods. to which assessment protest was duly made.

The other case is that of the La Mode Importing Co., in which case gowns were imported under like conditions, a similar bond being given. The gowns were used some five months in the manufacturing establishment of the importers and then offered for export free of duty, but were likewise assessed for duty, and this assessment was also protested and the assessment brought before the Board of General Appraisers for review.

In the latter case the facts appear to be that after the gowns had been so employed by the importers as models for the period stated they were sold to Robinson & Co. (Ltd.), of Winnipeg, Manitoba. to which place they were exported.

It was upon this case that the opinion of the board was predicated, and it will be first discussed.

The subsection in question, so far as material to the consideration of the questions involved, reads as follows:

Subsection 4. * * * Models of women's wearing apparel imported by manufacturers for use as models in their own establishments, and not for sale, * * * may be admitted without the payment of duty under bond for their exportation within six months from the date of importation and under such regulations and subject to such conditions as the Secretary of the Treasury may prescribe: *Provided*. That no article shall be entitled to entry under this section that is intended for sale or which is imported for sale on approval.

The contention made before the board and in this court by the Assistant Attorney General was, first, that the identity of the goods

had not been established, and, secondly, that as the goods had been sold and delivered to a common carrier in this country to be exported abroad, this constituted a sale in this country, and such sale resulted in subjecting the goods to tax.

The board found against the contention of the Assistant Attorney General upon the first question of fact, and upon a review of the testimony we are not disposed to disturb that finding.

The board, however, sustained the second contention in a carefully considered opinion, from which we quote:

It may be said that there has been a literal compliance with that section in that the gowns in question were exported. To entitle the importer to the privilege of free entry which is extended by this statute, there must be something more than the exportation of the gowns within six months. Something must precede that—that is, they must be brought in for use as models in their own establishments and not for sale. The words "not for sale" imply a condition of mind, an intention and purpose, which must have existed at the time of importation. It must, in order to entitle the importer to the admission of such gowns free of duty, have been his intention not to sell the same. To safeguard the carrying out of that intention the law requires him to give a bond. The obligation of that bond is that he will export the merchandise. A provision is therein contained which would unquestionably give him permission to sell the same upon payment of duty. The intention of a party is not to be determined solely by his statements made either at the time or afterwards, but rather by his acts and the circumstances which attend the transaction under consideration. The fact that the gowns were kept in the importer's establishment for almost the period allowed by law, and then, as stated by the witness, an employee of the company, they were sold, "so we did not need to pay duty," indicates, we think, that upon importation of the gowns the intention of the company was at least an alternative one. But, whatever may have been the importer's intention, we think, under the law; he had a right to change his mind and sell the gowns, but the penalty for thus changing his mind is the payment of the regular duty upon the gowns.

Therefore, upon citation of the rule of the case of Swan v. United States (190 U. S., 143) and other authorities to the effect that where provisions of the revenue law are claimed to carve out special privileges or exemptions from the general provisions for taxation, and the statute is of doubtful construction, the doubt is to be resolved in favor of the Government, reaches the conclusion that the importers have failed to make a case.

This is new legislation. Up to the enactment of this subsection these models would unquestionably have been subject to duty upon entry. As the models are often used in a way which results in leaving them of little value, this exaction bore somewhat heavily upon the domestic manufacturer, and it evidently was for his relief that this statute was enacted. So provision was made that he might import and use these models in his establishment so long as he kept strictly to that purpose and then export them. If the fact that he exports them for profit or for purposes of sale abroad could be taken as indicating that he had not an honest purpose when he

imported them, or that he imported the goods with intent to sell, the provision permitting exportation would be of little value to the importer. We think the words "must be imported for use as models in the establishment of the importer" are employed in contradistinction to the other phrase "and not for sale." The words "not for sale," as stated by the general appraiser, imply a condition of mind, and that condition relates to the date of importation and the then present purpose, as the opinion of the general appraiser implies. If imported for sale, the statute implies that the goods would not be used in the importer's establishment as models and per contra if imported for use as models they would not be for sale, that is, for present sale, and not imported primarily for that purpose.

The goods as imported never came into competition with domestic goods of like character. When exported they have served the real purpose of their importation. The only question of doubt seems to be whether when a sale is made at any time before exportation the goods become liable to duty. If the sale were for consumption in this country, no injustice could arise from imputing to the importer by relation a purpose to sell, as in holding that the goods were imported for that purpose. But a sale which was only effected or completed by the act of exportation would seem to stand on a different ground. Exportation, in law, if it does not mean something more than merely sending an article out of the country, is oftentimes, if not generally, accompanied by a contract either of bargain or sale or of consignment, and the sale may be deemed an incident to and an instrumentality in effecting the export. Certainly one would not ship his goods abroad without destination other than the name of the port or town to which they are to be consigned. Some one must be there to receive them. Either the owner himself must go in person or send an agent, or he must have a factor or a purchaser at the end of the route. This is the only effectual means of concluding the carrying out and export of the goods. The statute having provided for and in fact required an exportation within six months, we think a sale on exportation was as an incident to such exportation within the rights of the importer. To hold otherwise would involve the very nice distinction between an exportation by shipment on consignment and a shipment on sale, of which the act of exportation was thus a part.

Counsel for the Government makes the broad contention that the statute should be construed as requiring the reshipment of the article to the foreign seller at the place from which it was exported to this country. We think this can not be the correct interpretation. In the first place, if such had been the purpose, it would have been very easy for Congress to have so expressed it. What Congress *has* required is a bond that the goods used as models shall be exported.

within six months, and, as pointed out, we think Congress has sufficiently manifested the purpose to confer the right to do those things which usually accompany an exportation, which would include a sale of the goods to the consignee abroad.

If the case were one in which the goods had not in fact been subjected to the use for which they were originally designed, namely, the use as models in the establishment of the importer, the reasoning of the Board of General Appraisers would be without fault and could be very well sustained and the inference would be very strong, if not conclusive, that the goods were imported with intent to make a sale, and therefore for sale, as contradistinguished from their use as models. But such is not the present case.

Nor do we think the case is one for the application of the rule of the court in Swan v. United States, supra. In other words, we think there is no such uncertainty as to the meaning of the Congress as to call for the application of the rule that doubts in case of a grant or a privilege are to be resolved in favor of the Government.

We think the importer was entitled to the relief claimed, and, as in the case of Louise & Co. v. United States, the questions presented were the same and the finding of facts as to the identity of the goods was likewise in favor of the importer; the reasoning which we adopt on the first issue is controlling of that case also, and the decision as it relates to each importation is reversed and the protest sustained.

### CONCURRING OPINION.

SMITH and BARBER, Judges, specially concurring:

We understand from the record and files in these cases that each of the importers brought the specified goods to this country for some one of the purposes mentioned in the applicable statute, thereby entitling them to import the same without the payment of duty; that all the requirements of the Treasury Department in such cases were complied with; that the goods were actually used here for such purposes only and exported within the period provided by law; that the only question raised by the collector at the time of export was that the merchandise had not been positively identified as that which was imported, which contention was not sustained by the board and is not by this court; that such merchandise was in each case shipped by the importers in their own names consigned to persons in places in foreign countries; that the necessary steps relating to such consignment and exportation were taken and the goods laden under the supervision of customs officials, all in compliance with the applicable regulations; and that there was in fact an uninterrupted transportation of the goods in conformity with their consignment.

So understanding and assuming, we concur in the conclusion.