BERGDORF & GOODMAN CO. *v.* UNITED STATES (No. 1917).[1]

1. EVIDENCE—PRESUMPTION—ARTICLE 383, CUSTOMS REGULATIONS OF 1915—SUB-
   SECTION 4 OF PARAGRAPH J OF SECTION 4, TARIFF ACT OF 1913—" MODELS OF
   WOMEN'S WEARING APPAREL."

   When women's wearing apparel, which had been entered in bond under sub-
   section 4 of paragraph J of section 4, tariff act of 1913, as being for use as
   models and not for sale, was presented for exportation showing that the seals
   affixed in accordance with article 383, Customs Regulations of 1915, had been
   tampered with and the cords attached pursuant to the same article had been
   cut, it must be presumed that the identification marks had been designedly
   interfered with to facilitate the use of the apparel for some purpose other
   than as models.

2. EVIDENCE, SUFFICIENCY—WITNESS, COMPETENCY.

   The manager of the importing company testified that the identification
   marks affixed pursuant to article 383, Customs Regulations of 1915, to women's
   wearing apparel imported in bond under subsection 4 of paragraph J of sec-
   tion 4, tariff act of 1913, for use as models, had been unintentionally or acci-
   dentally interfered with, and that the apparel had not been out of the import-
   ing company's establishment or lent to anyone.  Since it did not appear that
   he had direct charge or custody of the apparel or that he was in a position
   to know of his own knowledge whether or not the goods had been taken out
   of the establishment and put to a use other than that for which they had been
   entered, he was not competent to so testify, and his testimony did not estab-
   lish such statements as facts.

United States Court of Customs Appeals, November 26, 1918.

APPEAL from Board of United States General Appraisers, Abstract 42096.

[Affirmed.]

---

[1] T. D. 37843 (35 Treas. Dec., 253).

*B. A. Levett* for appellant.

*Bert Hanson*, Assistant Attorney General (*Samuel Isenschmid*, special attorney, of counsel), for the United States.

[Oral argument Oct. 29, 1918, by Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Two taffeta gowns imported at the port of New York in the month of August, 1915, were admitted free of duty under bond for their exportation in accordance with such regulations and subject to such conditions as were prescribed by the Secretary of the Treasury. Within the six months' period the importers offered for export two taffeta gowns which they claimed to be those admitted free of duty under their bond.

The appraiser, however, reported to the collector that the seals and cord attached to the gowns on importation in accordance with the Treasury regulations were not intact, and the collector, therefore, assessed duty on both gowns, payment of which duty was protested by the importers on the ground that the goods were not dutiable under that part of subsection 4 of paragraph J of section 4 of the tariff act of 1913, which reads as follows:

* * * Models of women's wearing apparel imported by manufacturers for use as models in their own establishments, and not for sale * * * may be admitted without the payment of duty under bond for their exportation within six months from the date of importation and under such regulations and subject to such conditions as the Secretary of the Treasury may prescribe: *Provided*, That no article shall be entitled to entry under this section that is intended for sale or which is imported for sale on approval.

The Board of General Appraisers overruled the protest and the importers appealed. The importers filed no brief and presented no argument in support of their appeal, but on a motion to dismiss the appeal for failing to file a brief, stated that they relied on the case of Louise & Co. et al. *v.* United States (8 Ct. Cust. Appls., 430; T. D. 37669).

The Government contended before the board, and by brief and oral argument contends here, first, that the evidence does not establish that the wearing apparel in question was imported by the importers for use as models in their own establishments, and not for sale; second, that the regulations prescribed by the Secretary of the Treasury for the identification of the merchandise have not been complied with, and that therefore, even if the goods had been imported for the use specified in the statute and not for sale, free entry must be denied because of the failure to comply with the regulations and conditions which the Secretary of the Treasury was expressly authorized to prescribe.

The original regulations and conditions promulgated by the Secretary of the Treasury for the free entry of models of women's wearing apparel, under the provisions of subsection 4 of paragraph J, hereinbefore cited, required, among other things, that such goods " should be indelibly marked at the time of their importation with the word ' models' in such a manner as to render them unfit for use otherwise than as models." The Secretary of the Treasury also directed that samples of women's wearing apparel and fabrics, and all other articles imported as samples, should be *indelibly marked, stamped, or slashed* where practicable in such a manner as to render them unfit for use otherwise than as samples. (T. D. 33806.)

The regulations and conditions just referred to went into effect on the 24th of October, 1913, and continued in force until the 16th of March, 1914, when they were, on recommendation of the appraiser at the port of New York, amended so as to accomplish identification of models and samples not by destroying the marketability or usefulness of the wearing apparel but by attaching to it and its trimming a cord and seal in such a way that no part of the article could be removed without either destroying it or removing the cord and seal. (T. D. 34273.)

In April, 1913, the Treasury regulations were further amended so as to authorize the collector to mark samples entered under bond for exportation in such a way as would insure their identification upon exportation. (T. D. 34374.) By that amendment it was further provided that the importer should not be required to give a bond for the exportation of samples which were either too small for use or which were cut or slashed so as to render them incapable of use.

The Customs Regulations of 1915, article 383, require that models of women's wearing apparel must be marked for identification by means of a cord and seal, and that the invoices covering such articles shall " state or have attached a statement showing the character of the material from which made and the quantity and kind of each fabric, lace, embroidery, trimming, and lining contained therein, and the total value of each completed garment."

The intention of the regulations and conditions first announced by the Secretary of the Treasury, and of all the amendments thereto, was to exclude from our trade models and samples of women's wearing apparel unless the proper duty thereon was paid; and to accomplish that result both the amendments and the original regulations and conditions provided a means of identification which made it practically impossible to evade duty by exporting any wearing apparel which was not wholly identical with the models imported free. The amendments as well as the original regulations and con-

ditions made the models and samples provided for in subsection 4 of paragraph J the best evidence of their own identity when presented to the collector for exportation. As such models and samples are the best evidence of their identity, protection of the revenue, the primary object of the regulations, demands that no evidence be substituted or accepted in lieu of it which does not just as certainly and satisfactorily establish that the goods offered for export are identically the same as those admitted to free entry.

No presumption whatever obtains in favor of models or samples submitted for export which do not bear the identification marks prescribed by the Treasury regulations or which give evidence that such marks have been once detached or intentionally tampered with. To escape the payment of duty on such models and samples, the importer must definitely prove by competent evidence not only that the goods tendered for export are the identical models or samples which were imported free but also that after importation they have been used only as samples for taking orders or as models in the importing manufacturer's own establishment, and for no other purpose. That proof the importers, in our opinion, failed to make.

There is no evidence at all in the record that the gowns sought to be exported were the identical models imported, and therein this case differs from the case of Louise & Co. v. United States, upon which the importers rely. The report of the collector to the Board of General Appraisers does state that the gowns in question were entered under the provisions of subsection 4 of paragraph J of section 4, of the act of 1913, and admitted free of duty. Fairly construed, however, that report can not be held to mean that the collector was satisfied that the gowns presented for export were the very same model gowns imported free. For all that he knew or could know the lace trimmings, linings, or other materials attached on importation to the articles might have been removed and cheaper lace trimmings or other materials substituted.

True, the regulations provide that the invoice shall state not only the character of the material of which free-entry models are made, but also the quantity and kind of lace, embroidery, and lining contained therein as well as the total value of the completed garment, but it can hardly be held that by that provision the collector was remanded to statements in the invoice for identification of the goods in case of removal of the identification marks which he himself had placed upon them in accordance with other regulations. In fact, identification by attaching a cord and seal in such a way as to prevent the removal of any part of the model so identified without either destroying the article or detaching the cord and seal is wholly at

odds with the idea that the Secretary of the Treasury intended that the statements of the invoice should become determinative of identity in the event that the goods were not marked as he prescribed. The goods were assessed for duty and the devices attached to them on importation for their proper identification were apparently intentionally rendered worthless for that purpose by tampering with the seal and cutting the cord while the merchandise was in the importers' custody. In the face of those facts we can not presume from the collector's report, and much less from the invoice, that the gowns surrendered to the collector for export were in make or material identical with the models imported.

Moreover, as it appears from the collector's report that the seals were tampered with and the cords cut, it must be presumed that the identification marks were designedly removed and that they were removed to facilitate their use for some purpose other than as models That presumption might have been rebutted either by proving that the identification marks had not been intentionally tampered with or by definitely establishing that the goods had been put to no use other than that specified in the entry, and that they had been used solely as models in the importers' own establishment. The only evidence in the record as to such matters is the testimony of the manager of the importing concern, who stated that the seal came loose either because of the ordinary wear and tear in the showroom or because it was unintentionally torn off either by being stepped on or in some other way. He admitted, however, that he did not know how or when the cord was broken and the seal removed. He also said that the gowns had never been out of the establishment, and that they had been loaned to no one for any purpose. Inasmuch as it does not appear that the manager had direct charge or custody of the merchandise in issue, or that he was in a position to know of his own knowledge whether or not the goods had been taken out of the establishment and put to a use other than that for which they were entered, we do not think that he was a competent witness and can not accept his testimony as a sufficient substitute for the evidence prescribed by the regulations and which would have been furnished by the goods themselves if the cord and seal attached on importation had been left intact. Inasmuch as, in our opinion, the evidence submitted by the importers failed to establish satisfactorily that the gowns sought to be exported were identical with the models imported and that they had been used solely as models in the importers' own establishment, it follows that the protest was properly overruled.

The decision of the Board of General Appraisers is therefore *affirmed*.