GRAB FASHION CO. ET AL. v. UNITED STATES (No. 2006).[1]

1. CONSTRUCTION, SUBSECTION 4, PARAGRAPH J, SECTION IV, TARIFF ACT OF 1913.

The provision of subsection 4, paragraph J, Section IV, tariff act of 1913, exempting from duty "models of women's wearing apparel imported by manufacturers for use as models in their own establishments, and not for sale" goes to the intention of the importer at the time of entry.—Louise & Co. *v.* United States (8 Ct. Cust. Appls., 430; T. D. 37669). This is a question of fact to be decided in each case upon the testimony adduced therein.

2. MODELS OF WOMEN'S WEARING APPAREL.

Models of women's wearing apparel were imported under bond for exportation within six months as being for use as models in importers' manufacturing establishments and not for sale, according to the provisions of subsection 4, paragraph J, Section IV, tariff act of 1913, admitting such free under such circumstances. It

---

[1] T. D. 38262 (38 Treas. Dec., 90).

was shown that importers sold some, rented some, permitted some to be copied for a price and used the residue as models in their own establishments. Upon the application of the importers for exportation of such residue, duty was properly assessed upon them, as it does not appear that importers at the time of entry, intended them for use as models in their own manufacturing establishments and not for sale.

### United States Court of Customs Appeals, February 2, 1920.

APPEAL from Board of United States General Appraisers, G. A. 8289 (T. D. 38145).

[Affirmed].

*Brooks & Brooks (Frederick W. Brooks, jr.*, of counsel) for appellants.

*Bert Hanson*, Assistant Attorney General (*Samuel Isenschmid*, special attorney, of counsel), for the United States.

[Oral argument Dec. 18, 1919, by Mr. Frederick W. Brooks, jr., and Mr. Hanson.]

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in this case consists of women's suits, coats, and dresses, which were imported from Paris. The importation of the Max Grab Fashion Co. consisted of 61 garments; that of B. Sirotta consisted of 39 garments.

At the time of the several importations the importers claimed free entry of the garments under the provision for "models of women's wearing apparel imported by manufacturers for use as models in their own establishments, and not for sale," which appears in subsection 4, paragraph J, Section IV, of the tariff act of 1913.

The following is a copy of the pertinent part of the paragraph:

\* \* \* models of women's wearing apparel imported by manufacturers for use as models in their own establishments, and not for sale, \* \* \* may be admitted without the payment of duty under bond for their exportation within six months from the date of importation and under such regulations and subject to such conditions as the Secretary of the Treasury may prescribe: *Provided*, That no article shall be entitled to entry under this section that is intended for sale or which is imported for sale on approval.

In conformity with their claim under this provision the importers entered the merchandise upon importation as models and gave bonds for the exportation thereof within six months as provided in subsection 4, and the regulations promulgated thereunder by the Secretary of the Treasury in T. D. 36794.

Within the six months' period stipulated in the bonds the Max Grab Fashion Co. exported 50 of the imported garments; and within the same period B. Sirotta exported 25 garments of his importations. As to these exportations the importers claimed exemption from duty, upon the alleged ground that they were within the terms of subsection 4, supra, as models of women's wearing apparel which had been imported by them as manufacturers for use as models in their own establishments and not for sale, and which, furthermore, after having been so entered and so used had been exported according to the department's regulations within the period allowed by law.

The collector, however, denied this claim of the importers and assessed duty upon all of the imported garments. The importers filed their protest against the assessments, and the issue was submitted to the Board of General Appraisers. The board overruled the protest, and the importers appeal.

It will be observed that no model garments are entitled to the exemption provided by subsection 4, except such as are imported by manufacturers for use as models in their own establishments, and not for sale; nor shall they when imported be intended for sale or for sale on approval. The first question with reference to the importations, therefore, goes to the intention of the importers at the time of entry. For if the garments were then intended for sale and were accordingly offered for sale, they could not escape duty under the law, even though they should remain in fact unsold, and be subsequently reexported.

This statement is in line with that appearing in the decision of this court in the case of Louise & Co. *v.* United States (8 Ct. Cust. Appls., 430–433; T. D. 37669), wherein the court when dealing with the same provision said:

The words "not for sale," as stated by the general appraiser, imply a condition of mind, and that condition relates to the date of importation and the then present purpose, as the opinion of the general appraiser implies. If imported for sale, the statute implies that the goods would not be used in the importer's establishment as models and per contra if imported for use as models they would not be for sale, that is, for present sale, and not imported primarily for that purpose.

It will be seen that the question of intention thus referred to is a question of fact to be decided in each case upon the testimony adduced therein. In the case at bar the board found against the importers upon this question of fact, and the decision upon the issue at large was rested upon this finding. The following extract from the board's decision exemplifies this statement:

We are convinced from hearing the testimony in this case that the protestant, at the time he imported the gowns in question had no definite purpose; had settled upon no particular gown that he intended to export; had settled upon no particular gown that he would use as a model in his own establishment: that it was his purpose and intention at the time the gowns were imported, to rent to his customers such of the gowns as they desired upon his terms, sell such as he found good sale for, and use as models in his own establishment such as he chose to use or did not sell or rent.

From all the evidence in this case it is quite clear to our minds that the importer at the time he imported the gowns here under consideration did not have a definite intention to export them, but that he intended to export them only in the event that they were not available for sale or renting out to others. This we think does not satisfy the law.

Upon a review of the record we are convinced that the board's decision is clearly sustained by the evidence.

It appears that substantially similar methods of business in the premises were pursued by the two appellants who are parties herein,

although it may be noted that the Max Grab Fashion Co. in fact maintained an establishment in this country for the manufacture of women's garments, whereas B. Sirotta simply reproduced copies of imported garments to be sold in turn as models to other manufacturers.

In the present instance the importers or their representatives purchased in Paris a line of women's wearing apparel suitable for use in this country as models of the season's fashions in such goods. When these garments were received in New York, they were immediately placed upon inspection for sale or rent to other manufacturers of women's garments. Notices in writing or by telephone were promptly sent to numerous customers of the importers advising them of the receipt of the garments, and commending the articles as desirable models of the season's styles, and also requesting that the customers call without delay to inspect them. There can be no doubt at all that the purpose of the invited inspection was to make sales of the importations to the customers, or to rent the garments out for use as models by other manufacturers during the season. The customers were also offered for a price the privilege of copying such models as they might select without removing them from the importers' storerooms.

This practice extended to all of the imported models, that is to say, they were all exhibited to the trade with a view to selling any or all of them, or of renting any or all of them, and also of permitting copies to be made of them without removal, according to the demands of the trade; and this was the primary purpose entertained by the importers at the time the goods were imported and entered in this country. In the meantime also the practice was that such models as were not sold were used when not rented out by the importers themselves, in the one case as models from which garments were manufactured, in the other case as exemplars from which other models were reproduced. And it was all the time the purpose and intention of the importers to reexport such models as remained unsold and unrented at the close of the six months' period, and to claim exemption from duty in respect to them under the provisions of law above cited. This practice explains the fact that only part of the respective importations are involved in this case, the other garments of the importations having been rented out and not reexported.

We will not quote the detailed testimony in the record in support of these statements, but the following extracts are given:

Mr. Sirotta testified in part as follows:

Q. Is it not your practice on receiving importations of this kind to inform your customers that you have them and ask your customers to come and see them?—A. I inform my customers I have models for sale.

  *    *    *    *    *    *    *

Q. You had rented out models of imported gowns that you had previously imported, had you not?—A. Yes, I do that.

Q. That is part of your business?—A. It is part, yes, to help me out, because the gowns are so expensive.

Q. It is your customary business?—A. I am in the model business.

Q. It is the custom for you to rent models that are selected by your customers?—A. I do not always rent them; I sell outright.

Q. You sell and rent, don't you?—A. Yes, I sell and rent.

Q. Some of these fourteen on which you make no claim were sold and some were rented, were they not?—A. Some were sold, some were rented—I don't think any of them were sold yet. I still have them.

Q. Did you know at the time you imported these models that you were going to retain (14) and export the 25 numbers which you have given? —A. No, I do not.

Q. You did not know as a matter of fact what would become of any particular number?—A. I did not know how many I would keep and how many I would pay duty on, because the law gives us the privilege to take as many as we can use.

Q. You did not know at that time whether you would sell any of them or whether you would rent any of them, what particular numbers?—A. No, I could not tell.

Q. For instance, it might have just as well happened that you would have rented or sold No. 5, the first number you called off, as No. 4?—A. I don't get you.

Q. If it was possible at the time of your importation you would have disposed of No. 5 the same as you would have disposed of No. 4 on which you make no claim?—A. I can never tell which I sell, because they are not selected.

Q. You can not tell which you are going to rent?—A. I could not tell beforehand, no.

    *        *        *        *        *        *        *

Q. But to sell them if there was a purchaser for them?—A. Yes.

Q. Any of them if anybody wanted to buy?—A. Yes, sir.

Q. And to rent them if anybody wanted to rent? A. Yes.

    *        *        *        *        *        *        *

Q. When you let other people have these models they pay you for the privilege of using them?—A. Oh, yes.

In reference to the Max Grab Fashion Co. it appears that the company had prepared a printed contract for use in disposing of the models, a copy of which is as follows:

MAX GRAB FASHION CO.,
392 Fifth Avenue, New York.
Model Dept.

In consideration of your having shown to me this day your collection of imported garments, I agree to pay the amount of $100 (one hundred) payable net cash

It is understood and agreed that for this amount I am entitled to rent the following four models from the above collection:

No. 218, No. 211, No. 210, No. 223.

You will deliver one or more of these numbers at your earliest convenience any afternoon between 5 and 6 p. m., and the garments delivered to me will be at your call the following day at 10 a. m.

It is understood and agreed that even if I do not desire to copy any of the above four models, the amount of $100 is to be paid by me.

For the privilege of renting the following additional models, Nos. ................. I hereby agree to pay the sum of $25 each..

Total amount of contract, $...................., payable net cash.

Copy of this contract has been handed to me.

Name.................................................................

Address...............................................................

In respect to the company's intentions at the time of the importation of the garments Mr. Grab testified in part as follows:

Q. Was that the only purpose of your bringing them in as an importation?—A. And to rent.

    \*        \*        \*        \*        \*        \*        \*

Q. And it was your practice usually to rent out some of those models to other manufacturers?—A. Yes, sir.

Q. You would rent any of them that were in demand, would you not?—A. Yes.

These facts plainly negative the claim of the importers that the garments in question were imported for use as models in the establishments of the importers only, and not for sale. For it was the primary intention of the importers at the time of entry to place a price upon each and all of the importations, and to expose them and in a limited 'way to advertise them for sale or rent at these prices. Those only which found no buyers were used as models by the importers themselves, and even these were rented to others for use if opportunity offered. This course of procedure substantially results in making merchandise of the importations, and plainly does not respond to the requirements of the statute as a basis for the exemption of duty upon them. This fact therefore is decisive of the issue and makes it unnecessary to consider or decide the various other important questions which are argued by counsel in the briefs.

The conclusion of the board upon the vital issue of fact above set out is therefore sustained and the decision is affirmed.

See also David Crystal Co. case (T. D. 37318; G. A. 8088); Bergdorf & Goodman Co. v. United States (9 Ct. Cust. Appls., 11; T. D. 37843); Louise & Co. v. United States (8 Ct. Cust. Appls., 430; T. D. 37669).

*Affirmed.*