LOUISE & CO. ET AL. *v.* UNITED STATES (No. 2068).[1]

EVIDENCE, PRESUMPTION—MODELS OF WOMEN'S WEARING APPAREL.

Where models of women's wearing apparel were imported in bond under subsection 4, paragraph J, section IV, tariff act of 1913, with the intention that they be used in importers' manufacturing establishments and with no intention to sell them, the sale of some of them, the sending out of some of them to have their embroidery copied, and the exhibition of one of them in various cities where its importer had no establishment raise no presumption that all of them were imported for purposes other than for use as models by importers in their own establishments, and do not subject to duty such of them as are offered for exportation in accordance with the provisions of the subsection. Where importers are in the business of importing and renting or selling models, as was the case in Grab Fashion Co. et al. *v.* United States (10 Ct. Cust. Appls., 39; T. D. 38262), it may well be held that the very nature of such a business necessarily implies that the purpose of importing any particular model can not be determined as of the date of importation, and that, therefore, none of the models can be said to have been imported for the limited uses contemplated by the subsection; but where, as in this case, importers are engaged in the business of manufacturing and selling women's wearing apparel and models thereof, no such thing can be implied.

United States Court of Customs Appeals, March 15, 1921.

APPEAL from Board of United States General Appraisers, Abstracts 43824 and 43852.

[Modified.]

*Brooks & Brooks* (*Frederick W. Brooks, jr.,* and *Ernest F. A. Place* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Samuel Isenschmid,* special attorney, of counsel), for the United States.

[Oral argument Jan. 21, 1921, by Mr. Place and Mr. Hanson.]

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Louise & Co. and Bernard Sirotta imported into the country various articles of women's wearing apparel, which were entered by them at the customhouse as models for use in their own establishments, and not for sale. Upon that entry and the execution of a bond conditioned that the several items of wearing apparel would be exported within six months after importation in accordance with Treasury regulations, the goods were admitted without payment of duty.

---

[1] T. D. 38660.

Subsequent to the admission of the models some of them were removed from the importers' establishments for one temporary use or another, some of them were held therein for more than six months after importation and some of them were sold. The collector ruled that the sale or removal of any of the models from the importers' establishments for any use whatever was such a violation of the terms of the entry and the conditions of the bond as to render *all* of the models imported subject to duty. Accordingly duty was assessed not only on the models which were sold, or removed from the importers' establishments or retained therein for more than six months, but also on those which were used as models by the importers in their own establishments exclusively and which were either exported or surrendered for exportation to the customs officials within six months after importation. The importers protested against the collector's action and claimed that the models were exempt from duty under that part of subsection 4 of paragraph J, section IV of the tariff act of 1913, which reads as follows:

(J) SUBSEC. 4. That, * * * models of women's wearing apparel imported by manufacturers for use as models in their own establishments, and not for sale, * * * may be admitted without the payment of duty under bond for their exportation within six months from the date of importation and under such regulations and subject to such conditions as the Secretary of the Treasury may prescribe: *Provided, That no article shall be entitled to entry under this section that is intended for sale or which is imported for sale on approval.*

The Board of General Appraisers overruled the protests and the importers appealed.

The record shows that the appellant Louise & Co. is engaged in the business of manufacturing and selling women's wearing apparel and models thereof. The models manufactured and sold by the firm are either designed and originated by it, or are copied from foreign originals imported for the purpose because of their make and style. The manager of the company admitted that imported models were sometimes sold when an advantageous offer was made for some particular model, or when the models became subject to duty, either because manufacturing exigencies had required their retention for a period longer than six months, or because the customs identification tags or customs seals had been lost or removed while the models were in use. The testimony is uncontradicted, however, that all of the foreign models were imported for use as models in the manufacturing establishment of Louise & Co., and there is no evidence showing, or tending to show, that the imported articles were offered or advertised for rent or sale, or that the renting or sale of imported models constituted any part of the regular business of the importing company.

The company imported and entered at the customhouse 52 different articles as models, two of which, however, were purchased in Paris

for Weingarten & Bruck and did not belong to the importer. As the Weingarten & Bruck items were invoiced to Louise & Co. instead of to the true owners, they were entered by the company as part of its consignment of models. After entry, however, the duties were paid on both items and they were turned over to Weingarten & Bruck.

Items 15, 19, 21, 31, and 44 were embroidered gowns, and as Louise & Co. had no facilities for copying the embroidery on them, they were sent to Jobin, an embroiderer, with instructions to copy the embroideries. Apparently, because the embroideries were not copied by the establishment which imported the goods and because the gowns had been delivered to another establishment to have that work done, the collector of customs demanded the payment of duties on all five items, and with that demand the importer complied.

Items 22, 34, 38, 51, 52, 57, and 60, together with one silk and fur scarf and items 53, 54, 55, 56, and 59 were, with the proper shipping documents and within the time prescribed by the statute, delivered at the customhouse and received by the officer in charge of public stores for export, the first eight items to Henry Delafon, France, and the last five items to the Thompson Ahearn Co., Canada. Notwithstanding the fact that these models were held in the importer's manufacturing establishment until delivered to the appraiser's stores for exportation and that none of them was ever offered for sale or loaned to anyone or used by anybody outside of said establishment, the collector exacted duties thereon and the duties so collected were paid under protest by the importer.

As the 13 articles were exported within six months after importation and were entered for use and actually used as models in the establishment of Louise & Co., and as there is absolutely nothing in the record which would warrant us in concluding that any of such articles was offered for sale, and much less that they were imported for the purpose of selling them, we must hold that they were not subject to duty.

Bernard Sirotta was until the latter part of the year 1918 an importer of foreign models, and he made a business of renting or selling such models to the trade and to establishments other than his own. According to his testimony that method of dealing with imported models brought him into conflict with the customhouse and prior to the 15th of April, 1919, he limited his business to the manufacture of women's wearing apparel and to the importation and reproduction of foreign models, which reproductions he sold or rented to the trade.

Sirotta imported on the 15th of April, 1919, 22 articles of women's wearing apparel, which, having been entered by him for use as models in his own establishment and not for sale, were admitted free of duty upon his giving a bond that the articles would be exported, in accordance with Treasury regulations within six months from the date of their importation.

Items 1, 4, 7, 9, 10, 12, 13, 14, 16, and 18 were needed in Sirotta's factory for a longer period than six months, and were not tendered for export within the time limit of the bond. Of the items held beyond the time limit, items 4 and 10, and possibly 1, 7, 9, and 12, were sold. Item 6 was sold, but when, where, or to whom, or for what reason, does not appear. Item 19 was removed from the importer's establishment for the purpose of submitting it to inspection in cities and towns in which importer had no establishment. On all these items duties were paid at the rate and in the amount exacted by the collector. To the payment of the duties the importer made no objection save as to items 7 and 9, which he claims were not embroidered, and therefore not subject to the duty prescribed for embroidered articles, as found by the collector.

Items 3, 5, 8, 11, and 15 were actually used as models in the establishment of Sirotta exclusively, and prior to the expiration of the six months conditioned in the bond, the importer requested the customs officials to identify them and supervise their exportation. The customs authorities declined to identify the articles or to supervise their exportation and the models were, under date of September 9, 1919, exported without customs supervision to Montreal, Canada, the purchase price thereof being paid by Almy's (Ltd.) of that place to Bernard Sirotta, the exporter. At the time of importation Sirotta was not engaged in the business of selling or renting foreign models, but in the manufacture and sale of women's wearing apparel and of domestic reproductions of foreign models. As the models exported were used in the importer's own establishment exclusively and were not offered to the trade for rent or sale, we are of the opinion that the 5 items exported should not have been subjected to duty.

If it had appeared in these cases that the protestants were engaged in the business of importing and renting or selling foreign models, it might well be held that the very nature of such a business necessarily implied that the models were imported for sale or use in establishments other than those of the importers, or at the very least, that the purpose of importing any particular model could not be determined as of the date of importation and that therefore none of the models could be said to have been imported for the limited uses contemplated by the statute. The selling or renting of foreign models was not, however, the business of the importers. Their business was the manufacture and sale of women's wearing apparel and the manufacture and sale of copies of foreign models, one if not both of which industries it was the purpose of the statute to encourage. Models imported by such concerns are primarily designed to be copied, not sold or rented, but if a model be sold or rented, it can not be assumed or presumed that all other models were imported for that purpose.

The case of Max Grab Fashion Co. et al. v. United States (10 Ct. Cust. Appls., 39; T. D. 38262), cited by the Government, is not in

point.   In that case the importers *made a business of importing and renting or selling foreign models.*   Indeed, it is stated in the decision that—

when these garments were received in New York, they were immediately placed upon inspection, for sale or rent to other manufacturers of women's garments.   Notices in writing or by telephone were promptly sent to numerous customers of the importers advising them of the receipt of the garments, and commending the articles as desirable models of the season's styles, and also requesting that the customers call without delay to inspect them.   There can be no doubt at all that the purpose of the invited inspection was to make sales of the importations to the customers, or to rent the garments out for use as models by other manufacturers during the season.   The customers were also offered for a price the privilege of copying such models as they might select without removing them from the importer's storerooms.

·This practice extended to all of the imported models; that is to say, they were all exhibited to the trade with a view to selling any or all of them, or of renting any or all of them, and also of permitting copies to be made of them without removal, according to the demands of the trade; and this was the primary purpose entertained by the importers at the time the goods were imported and entered in this country.   In the meantime, also, the practice was that such models as were not sold were used when not rented out by the importers themselves in the one case as models from which garments were manufactured, in the other case as exemplars from which other models were reproduced.

It is contended that the privilege of the statute is limited to manufacturers of women's wearing apparel, and that the importer Sirotta was not a manufacturer within the meaning of the statute, inasmuch as he was engaged in the business of manufacturing and selling reproductions of foreign models.   Even if we accepted the restricted interpretation put upon the statute by the Government, we do not think that Sirotta's establishment can be excluded from the benefit of its terms, inasmuch as it affirmatively appears that Sirotta was at the time of importation a manufacturer not only of models but of women's wearing apparel as well.   True, he was a manufacturer of women's wearing apparel on a *small* scale and his *main* business was the making of reproductions of foreign models. But if the statute be limited to manufacturers of women's apparel, it is certainly not limited to the large manufacturers of women's wearing apparel who make that and nothing else.

The claim of the Sirotta protest that items 7 and 9 were dutiable as wearing apparel in chief value of wool and not as embroidered articles is not established by satisfactory evidence.

Items 22, 34, 38, 51, 52, 57, and 60, together with one silk and fur scarf, exported to Henry Delafon, France, and items 53, 54, 55, 56, and 59, exported to the Thompson Ahearn Co., Canada, all covered by the protest of Louise & Co., and items 3, 5, 8, 11, and 15, covered by the protest of Bernard Sirotta, were not subject to duty, and the decision of the board as to such items is reversed.   In all other particulars said decision is *affirmed.*