## GLICKMAN *v.* UNITED STATES (No. 2096).[1]

1. CONSTRUCTION, SECTION 4, PARAGRAPH J, TARIFF ACT OF 1913—"MODELS OF WOMEN'S WEARING APPAREL."

Section 4, paragraph J, tariff act of 1913, admitting free of duty models of women's wearing apparel for use as models and not for sale, applies not only to such models used for making garments for wear but also to such models used for making copies to be sold, rented, or used as models.

2. EVIDENCE—PRESUMPTION FAVORS BOARD.

Findings of the Board of United States General Appraisers upon doubtful questions of fact will not be disturbed unless wholly without evidence to support them or clearly contrary to the weight of the evidence; and regard is to be had to the advantage a trier of fact has over an appellate tribunal in determining the credibility of witnesses by their appearance and manner of testifying.

3. SAME—CREDIBILITY OF WITNESS.

It was shown that importer's principal witness, who was his daughter and business manager, had customarily encouraged customers who rented models of women's wearing apparel to believe that they were getting originals and not copies. The witness admitted this, but testified that the originals had remained at all times in importer's manufacturing establishment. This proof of bad faith and her interest in the business go to her credibility, of course, but did not justify the Board of United States General Appraisers in rejecting as untrue whatever she testified; and her statement that the models had not been out of importer's manufacturing establishment, not having been contradicted when there was abundant opportunity to do so if it were false and having been corroborated by proven relevant circumstances, should not have been thrown out.

### United States Court of Customs Appeals, November 21, 1921.

APPEAL from Board of United States General Appraisers, G. A. 8408 (T. D. 38612).

[Reversed.]

*Brooks & Brooks (Frederick W. Brooks, jr.,* and *Ernest F. A. Place* of counsel) for appellants.

*William W. Hoppin,* Assistant Attorney General (*John J. Mulvaney,* special attorney, of counsel), for the United States.

[Oral argument Oct. 4, 1921, by Mr. Place and Mr. Hoppin.]

Before DE VRIES, Presiding Judge, and SMITH, BARBER, and MARTIN, Associate Judges.

BARBER, Judge, delivered the opinion of the court:

Four importations of models of women's wearing apparel, the first entered October 28, 1918, and the last May 20, 1919, and four protests relating thereto, are involved in this appeal. The merchandise was entered as free of duty and bond given for its exportation under the provisions of section 4, paragraph J, subsection 4 of the tariff act of 1913, which provides that—

Models of women's wearing apparel imported by manufacturers for use as models in their own establishments, and not for sale, * * * may be ad-

---

[1] T. D. 38946.

mitted without the payment of duty under bond for their exportation within six months from the date of importation and under such regulations and subject to such conditions as the Secretary of the Treasury may prescribe: *Provided*, That no article shall be entitled to entry under this section that is intended for sale or which is imported for sale on approval.

All the merchandise covered by the first entry was exported within six months of importation. Some, but not all, of the merchandise covered by each of the other entries was also likewise exported. Duty was paid on the models not exported.

The regulations as to the giving of bond, etc., on entry were complied with.

The collector of customs assessed duty on all the merchandise covered by these entries in substance upon the ground, as set forth in his report to the Board of General Appraisers, that the conditions of the bond had been violated. The specific violation alleged was that a number of the models imported had been rented out and removed from importer's establishment. In other words, that importer had used the same for purposes other than those permitted by the quoted statute.

The importer duly protested the assessment of duties on such of the models as were exported within six months from the date of their importation; upon hearing before the Board of General Appraisers the protests were overruled.

It appeared that importer was engaged in the business of making copies of women's imported garments, which copies were rented or sold to various customers, and was also engaged in the business of manufacturing and selling garments for the trade. In some instances these manufactured garments were exact reproductions of the imported models, and in others changes were made therein. Importer also sold these reproductions at retail.

While the Government contends that a business such as the importer's is not entitled to the benefit of the statute, we think such claim can not be upheld. The purpose of the statute is to grant free entry to models of women's wearing apparel, if they are intended for, and after importation in fact are used, as models in the manufacturing establishments of the importers. To use them as models for making copies, which copies become the subject of merchandizing, would seem to be equally within the spirit and letter of the statute as the manufacturing of garments like the models for general wholesale or retail trade. Then, too, the importer here is engaged in manufacturing copies for sale as models as well as garments for wear fashioned after the models which they have imported.

In this respect we are not able to distinguish between the facts here and in the case of Louise *v.* United States (11 Ct. Cust. Appls., 41; T. D. 38660), nor disposed to differ from the views therein expressed.

The real question here, and it was so regarded by the Board of General Appraisers, is one of fact, and that is as to whether the garments in question were solely used in the importer's establishment or were taken therefrom with importer's knowledge and consent and used as models by some other concern. The board found this issue against the importer, and the question with us is whether this finding should be upheld in view of the well-established rule in this court that findings of the board upon doubtful questions of fact will not be disturbed unless the finding is wholly without evidence to support it, or is clearly contrary to the weight of evidence, and in this connection regard is to be had to the advantage that a trier of fact has over an appellate tribunal in determining the credibility of witnesses who actually appear before the former and not the latter.

It is not disputed that these models were duly inspected by the customs officials, who attached thereto the cords and seals provided by the customs regulations, and were then placed in importer's establishment in New York.

As to what happened thereafter the principal witness on behalf of importer was his daughter, Mrs. Pauline Weill. She testified that she managed her father's business; that she had personal knowledge of these importations; the uses to which they were put; knew when they came to her father's establishment, and what was done with them while there. She testified positively that none of them were removed therefrom until they were exported, excepting those upon which duty was paid. She did not know about the packing of some of the garments for export, but there seems to be no controversy as to that.

She testified that a Government officer or inspector, Mr. Drown, came to her father's place of business at various times while these imported goods were there, and at different hours of the day, to check up the same, and that in every instance he found the originals there.

In this particular respect she was corroborated by another witness, who, while he did not profess to know whether the models were kept in the establishment of importer all the time or not, did know, and so testified, that the special agent, Mr. Drown, came to the establishment of importer several times to check up the models that were covered by these four importations; that sometimes he came in the morning at the opening hour, about 8 o'clock, sometimes in the afternoon, and that he always found the original imported models in importer's establishment at such times.

The record shows that Mr. Drown was present when this testimony was given. He was not called as a witness by the Govern-

ment and did not in any manner dispute or deny this testimony on behalf of importer.

Importer's evidence is met by that given by some 10 witnesses on the part of the Government. In substance these witnesses say that during the period covered by the six months from date of these various importations they procured from importer's establishment models which they supposed, and which they were by importer given to understand, were original imported garments, and that they were charged and paid rent therefor. They so obtained them for the purpose of making copies thereof themselves. In some instances such models were kept several hours; some were obtained in the evening and returned about noon the next day; and in one case, at least, they were kept a week or so. No witness testified that upon such models there were the identifying marks of cord and seal, although the attention of some was directed to that particular fact, and no such witness testified that they knew these models so obtained were imported originals or garments from these importations.

Mrs. Weill, when inquired upon the stand about it, admitted that she led the Government's witnesses to believe they were getting originals, but denied that she expressly told them they were such, and the bills made to these various witnesses, which were introduced as exhibits in the case, contain nothing which warrants the inference that they relate to original imported garments rather than to copies thereof.

Upon this evidence the Board of General Appraisers concluded, in substance, that the interest which Mrs. Weill had in her father's business, and the fact that she deliberately practiced deception upon customers, warranted the conclusion that " her testimony therefore is hardly worthy of credence."

Without saying, if regard be had only to her own testimony, whether or not this conclusion is warranted, we think the board overlooked what we regard as evidence which strongly corroborates her and requires a different finding.

The primary question is whether or not the imported models were constantly kept in her father's establishment. Special Agent Drown was present when she testified that he came to her father's place of business at various times to check up the imported items, and always found them present. He did not see fit to deny this, and we think the obvious conclusion is that it was so. The fair inference from the evidence is that Mr. Drown went there unannounced, if not unexpected, near the hour of opening, and at any other hour that suited his purpose or convenience. He never found any of the imported items missing. In view of the times and frequency of his visits and the fact that such models as were taken out were kept

from a few hours to a week, as shown by the Government's testimony, and that upon those so taken the identifying cord and seal were never discovered, we are of opinion that the importer has established, for the purposes of this case, that these imported models were not removed from his establishment after they were placed therein until they were exported.

The deception practiced by Mrs. Weill upon her father's customers and her interest in the issue, of course, go to the credence of and the weight to be given to her testimony, but the deception which she is shown to have practiced does not per se deprive her testimony of all credibility. It should be remembered that there is no direct testimony, oral or documentary, that these imported garments were in fact removed from importer's establishment after they were placed therein and before exportation. .

The record shows that only one member of the board that decided this case heard the witnesses.

The judgment of the Board of General Appraisers is *reversed*.