## DONAT & CO. *v.* UNITED STATES (No. 1941).[1]

1. CONSTRUCTION, PARAGRAPH 335, TARIFF ACT OF 1913—HATS—"BLOCKED."

Hats which have been shaped in part as an incident only to the forming of their brims, or partly shaped by hand pressure or manipulation only, without any treatment for the purpose or with the effect of bringing them to their final shape by blocking, are "not blocked" within the meaning of that language in paragraph 335, tariff act of 1913.

2. STRAW HATS—BLOCKED—UNBLOCKED.

Straw hats of "Alpine" shape, known as "bodies," which have been placed upon a zinc brim form and subjected to slight hydraulic pressure in order to bring their brims to the proper widths according to style and demand, but which must yet be subjected to a blocking process by which they are stiffened with suitable sizing and pressed into permanent shape and conventional sizes, are entitled to claim classification as "not blocked," under paragraph 335, tariff act of 1913.

### United States Court of Customs Appeals, April 15, 1919.

APPEAL from Board of United States General Appraisers, Abstract 42500.

[Reversed.]

*Walden & Webster* (*Henry J. Webster* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, of counsel), for the United States.

[Oral argument Mar. 26, 1919, by Mr. Baldwin and Mr. Webster.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The present merchandise consists of men's straw hats imported from Italy under the tariff act of 1913. The hats have the so-called "Alpine" shape, with a crease running lengthwise along the top and a depression or indentation near the top on each side. The hats are imported in an untrimmed condition, and the sole question in the case is whether they are also unblocked when imported.

Paragraph 335 of the tariff act of 1913 imposes duty upon unblocked straw hats at the rate of 25 per cent ad valorem, whereas a duty of 40 per cent ad valorem is imposed upon similar hats if blocked.

The following is a copy of the provisions in question:

335. * * * Hats, bonnets, and hoods composed wholly or in chief value of straw, chip, grass, palm leaf, willow, osier, rattan, cuba bark, or manila hemp, whether

---

[1] T. D. 37997 (36 Treas. Dec., 384).

wholly or partly manufactured, but not blocked or trimmed, 25 per centum ad valorem; if blocked or trimmed, and in chief value of such materials, 40 per centum ad valorem; * * *.

The collector held that the hats in question were not unblocked when imported, and accordingly assessed duty at the rate of 40 per cent ad valorem. The importers protested, claiming the hats to be unblocked and dutiable at only 25 per cent ad valorem.

The question was heard upon testimony by the Board of General Appraisers, a number of witnesses being examined, and various samples being exhibited. The board upon consideration overruled the protest, and the importers now appeal.

Mr. Weber, the Italian exporter, testified that such hats as these are made by hand in private homes in the neighborhood of Florence as a "cottage industry"; that he collects the straw bodies from such sources, and then causes them to be washed in a solution, bleached, and rubbed smooth. The bodies are then placed upon a zinc brim form and subjected to slight hydraulic pressure in order to bring the brims to their proper width according to style and demand. This is not done, he says, in order to block the hats to shape, but only with intent to obtain the correct brim measure. The witness testified that neither the crowns nor brims are finished ready to wear; that this work is done in America; that these are rough shapes known as "bodies," and are not in fact blocked; that they were not shipped in packages usual for blocked hats, but in a manner customary for unblocked hats only.

It appears from the testimony of Mr. Perry, of the importing firm, and of Mr. Phelps, a domestic manufacturer of straw hats, that these hats are sold in this country exclusively to domestic manufacturers of straw hats, who block and trim them and thereby bring them to the condition of finished articles. In the course of the blocking process in this country the hats are stiffened with suitable sizing, they are then pressed into permanent shape by means of blocks, and at the same time they are reduced to conventional and graduated sizes, such as $7\frac{1}{8}$, $7\frac{3}{8}$, or $7\frac{5}{8}$, which is certainly an important if not an essential part of the blocking process. Different sizes of blocks are used to produce different sizes of hats. After the molding process is completed the hats are polished. It may be said that there is nothing in the record to indicate that the blocking process administered to the hats in this country is in any particular less than or different from the ordinary and complete blocking process by means of which soft-hat bodies without conventional sizes are blocked into finished hats ready to be trimmed and worm. Nor is it suggested that any economical or commercial advantage could accrue from a partial blocking of the hats in Italy, to be followed by a full and complete blocking of them anew in this country.

On the other hand, Mr. Bronsten, an importer and also a manufacturer of straw hats, testified that the appearance of the importations indicated that the hats had been blocked abroad, or at least shaped over a block by some means, just how—whether by hand or not—he could not say. Mr. Plant, another witness, also a local manufacturer of straw hats, said that he knew of no process except pressure over blocks which would bring straw hats like these to the shape which they had at importation. These two witnesses had never seen such hats manufactured in Italy and expressed an expert opinion only upon the subject.

The board took the view that the crease and indentations upon the hats as imported, together with the exporter's testimony concerning the process abroad whereby the hats had been placed upon brim forms and subjected to pressure, and the expert opinion of the two witnesses last named, indicated that the hats had at least partially been blocked before importation, and therefore could no longer claim the description of unblocked hats.

We think, however, that this conclusion places too restrictive a construction upon the language of the paragraph above quoted. According to its terms the rate of 25 per cent ad valorem applies not only to straw hoods but also to straw hats whether partly or wholly manufactured, provided only that they be not yet blocked or trimmed. If the hats be shaped in part as an incident only to the forming of their brims, or if they be partly shaped by hand pressure or manipulation only, without any treatment for the purpose or with the effect of bringing them to their final shape by blocking, they would remain unblocked within the sense of the statute.

Comparing the imported hats with the samples before us of similar bodies which have concededly been blocked, and giving to the testimony of the exporter the credence which seems to be due it, and observing the language of the statute above quoted, we are of the opinion that these hats are unblocked; that is to say, prior to their importation no step had actually been taken in the course of their manufacture which had advanced them beyond the condition and estate of hats otherwise fully manufactured but not yet blocked or trimmed.

We are not unmindful of the rule that a decision of the board upon the weight and value of testimony heard by it should not be disturbed except in very clear and convincing cases, but in the present case we disagree with the decision before us not so much because of a different conclusion upon the weight or value of conflicting testimony as because of our belief that the board has placed too restrictive an interpretation upon the terms of the statute in question.

The decision of the board is therefore reversed, and the claim of the protest for an assessment of 25 per cent ad valorem is sustained.

*Reversed.*