## LLOYD Co. v. UNITED STATES (No. 1979).[1]

1. CONSTRUCTION, PARAGRAPHS K, L, AND R, SECTION III, TARIFF ACT OF 1913—"MARKET VALUE."

Within the meaning of the term "market value," in paragraphs K, L, and R, Section III, tariff act of 1913, a single actual buyer may be a market.

2. EVIDENCE—ADMISSIBILITY.

The price which importer paid for merchandise is lawful evidence as to its market value or wholesale price.

3. ADMINISTRATIVE PRACTICE, FORCE OF.

The fact that the collector has for perhaps 20 years followed a practice at variance with his action in the case at bar should not lead this court to constrain him to continue a course plainly contrary to the provisions of the tariff act.

4. WALL PAPER SAMPLE BOOKS—APPRAISEMENT.

Books of wall-paper samples, made up to illustrate the stock of wall paper purchased, were imported. These books were paid for by the importer at a price based upon the cost of production. They were not sold by the importer to his customers, but distributed free, their cost being recouped as a part of the overhead expense. It can not be said that the action of the reappraisement board in refusing to hold them samples of no commercial value and in affirming their appraisement at the price paid for them was, in view of paragraphs K, L, and R, Section III, tariff act of 1913, illegal and of no effect as proceeding upon a wrong principle of law.

United States Court of Customs Appeals, December 9, 1919.

APPEAL from Board of United States General Appraisers, Abstract 43019.

[Affirmed.]

*B. A. Levett* for appellant.
*Bert Hanson*, Assistant Attorney General, for the United States.

[Oral argument Oct. 15, 1919, by Mr. Levett and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise now upon appeal consists of 2,628 sample books of wall paper; they are described in the invoices as tint books, counter

---

[1] T. D. 38217 (37 Treas. Dec., 283).

books, and stand books. Their cost price is stated in the invoices to be about $11,000. It is claimed by the appellant that the books are samples only, possessing no market value commercially, and therefore entitled to free entry into this country. The collector on the other hand assessed them with duty at an ad valorem rate. This defines in general terms the issue between the parties, and leads to a more detailed statement of the origin and character of the books in question.

It appears that the appellant is engaged in the business of buying wall paper directly from English manufacturers, and of importing it for sale to its customers who are retail merchants in this country.

In the usual course of trade the English manufacturers furnish in January of each year to each of their wholesale customers a set of sample books called factory pattern sets. Such a set consists of 2 tint books, 2 full-size counter books, 6 half-size counter books, and 12 quarter-size counter books. These contain samples of all of the various designs of wall paper which the factory will be in position to supply during the season. A single sample set is furnished gratuitously by the factory to each customer both in this country and abroad. These sets are not involved in this case, and they have been described for the purpose only of distinguishing them from the sample books which are now in question.

It appears that the appellant by the aid of the factory sets thus furnished it, and also after personal inspection in England, purchase for each season from the manufacturer a stock of wall paper suitable for its trade, a few of its selections being special designs but most of them being from the stock output of the factory. After the purchase of its season's stock from the factory the appellant next orders from the same manufacturer a large number of sample books suitable for its stock. The manufacturer does not furnish these gratuitously but charges for them a price based upon the cost of their production. This practice obtains likewise between the factory and its English wholesale customers or factors; that is to say, each customer after the purchase of his season's stock procures from the manufacturer a supply of sample books adapted to the selected stock, and pays for these a price determined by the cost of production. Both in this country and in England such sample books are furnished gratuitously each season by the wholesale merchants or factors to the retail merchants, and at the close of the season they are destroyed. It is almost needless to say that since such books are adapted to the stocks selected by the respective purchasers, no single set of books would exactly satisfy the requirements of any two dealers either here or abroad.

The present importations are such sample books as those just described. They were manufactured for appellant in England, and were paid for in due course; they were intended for free distribution

after importation among the retail merchants who are customers of the appellant, and were to be destroyed after a season's use.

When the appellant entered the sample books, together with other goods at the customhouse, its invoices disclosed the cost price of the books to be in the sum of about $11,000. This sum, however, it deducted from the invoices in order to "make market value" as a basis for the assessment of duty. It did this upon the claim as above stated that the books were samples only, possessing commercially no market value either in this country or in England, and therefore that no ad valorem rate of duty could apply to them. It was correctly assumed by it that no specific rate of duty was prescribed in the tariff act for such articles.

The collector, however, held that the goods were dutiable at the rate of 15 per cent ad valorem as "books" within paragraph 329 of the tariff act of 1913, and they were so assessed. The local appraiser appraised the sample books at the cost price given them in the invoice.

The appellant thereupon appealed from this appraisement to a single general appraiser, who sustained its claim that the articles possessed commercially no market value, and who therefore found that no ad valorem duty could be assessed upon them.

The collector appealed from this decision to a board of three general appraisers, who held that the sample books possessed in fact a dutiable market value, and who appraised this value at the cost price stated in the invoices. The result of this, of course, was to sustain the appraisement made by the local appraiser, upon which the collector had predicated the assessment.

Thereupon the appellant filed a protest against the assessment with the classification board, the operative part thereof reading as follows:

We claim that the goods in question are properly nondutiable under the act of October 3, 1913, as samples of no commercial value, and that your assessment of duty was based upon a decision of the Board of General Appraisers which was illegal and of no effect in that they proceeded upon a wrong principle of law and did not ascertain, estimate, and appraise the value of such merchandise in accordance with the law. We further claim that inasmuch as such merchandise had no commercial value for home consumption in the country of exportation it is entitled to free entry.

The board considered the protest and overruled it. The importer now appeals, and in its assignment of errors maintains that the decision of the appraising board was illegal, void, and of no effect; that there was no evidence before the board to warrant or sustain their finding as to a market value of the goods; and that the board proceeded upon a wrong principle, since it "found as a fact that said merchandise was neither sold in the country of exportation nor in the United States," and that notwithstanding this fact the board proceeded to find a market value "contrary to the meaning of said term

as set forth in paragraph R, of section 3, of the tariff act of October 3, 1913," and "contrary to the provisions of paragraphs K and L of section 3 of the tariff act of October 3, 1913." The claim follows that this action should have been held by the classification board to be invalid and void as proceeding upon a wrong principle of law, and therefore that the protests should have been sustained.

In coming to a decision upon this issue we assume without discussion that if the wall-paper books in question possessed absolutely no actual market value or wholesale price, at the time of exportation to the United States, in the principal markets of the country whence they were exported, within the purview of paragraph K, supra, nor such a value as is ascertainable according to paragraph L, supra, or paragraph R, of the same tariff act, then no ad valorem duty could lawfully attach to them. But according to our view the record not only fails to disclose such a state of facts, but to the contrary it affirmatively establishes the fact that the books actually possessed a market value or wholesale price at exportation such as responds in every particular to the provisions of the several paragraphs just cited.

According to paragraph R, supra, whenever imported merchandise is subject to an ad valorem rate of duty, the duty shall be assessed upon the actual market value or wholesale price thereof, at the time of exportation to the United States, in the principal markets of the country from whence exported; and that such actual market value shall be the price at which such merchandise is freely offered for sale to all purchasers in said markets in the usual wholesale quantities, and the price which the seller or owner would have received and was willing to receive for such merchandise when sold in the ordinary course of trade in the usual wholesale quantities.

According to the record in this case such sample books as are now in question were well-known articles of manufacture and sale in England, and were purchased in wholesale numbers by the entire wall-paper trade there. The manufacturers usually charged for them a price based upon the cost of production, and this custom was uniform throughout the trade. The price, therefore, which the appellant paid for the imported books is lawful evidence as to the market value or wholesale price of the articles. It is true that the sample books purchased by the various wholesalers differed in detail from one another in respect to some of the styles and kinds of papers exhibited therein. But this fact is not important, for they were all of the same general kind, and, furthermore, exactly similar books if desired could have been procured at the same price by all of the wholesalers. In such a case a single actual buyer would become a "market" for the merchandise in contemplation of law. Otherwise imported goods whose sale in the market of exportation

is restricted to a single buyer by reason of copyright, patent, monopoly, peculiarities of the markets, suitability for a single use only, or other not unusual circumstance of trade, might under the appellant's construction escape the payment of ad valorem duties notwithstanding the plain intendment of the law. It is true also that the sample books were gratuitously distributed among the appellant's customers in this country, but this fact is nominal only since their cost necessarily entered into the overhead expenses of the appellant's business in this country, and it was, of course, recouped as such. And at all events the goods came into this country as goods which had been bought and paid for abroad. Under these circumstances it seems clear that the price which the appellant paid for the goods in England may well have been accepted by the appraiser, in the absence of any modifying facts, as the wholesale price of the goods in that market at the time.

The testimony discloses the fact that for perhaps 20 years last past such importations as these have been held by the collector to be free of duty probably upon the grounds now urged by the appellant. We do not overlook the importance of this fact as an element in the case, but it should not lead us to constrain the collector to continue a course which we regard as plainly contrary to the provisions of the act. Pacific Creosoting Co. v. United States (1 Ct. Cust. Appls., 312; T. D. 31407).

In accordance with these views we affirm the decision of the board.
*Affirmed.*