## RENTNER *v.* UNITED STATES (No. 2832) [1]

United States Court of Customs Appeals, May 19, 1927

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*Reuben Wilson,* special attorney, of counsel), for the United States.

[1] T. D. 42217.

[Oral argument March 18, 1927, by Mr. Place and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

Appellant here, in February and March, 1925, made three importations of models of ladies' outer wearing apparel, ostensibly under the provisions of section 308 of the Tariff Act of 1922. Such models aggregated 82 in number. When each entry thereof was made, a bond for the exportation of the models covered by the entry, within six months from date of importation, was given pursuant to said section and the customs regulations in force. Within six months from date of the first importation and entry, 45 of such models were sold in this country and not exported. The below tabulation shows the number of models covered by each importation, the date of each entry, the date of release from customs custody, the date of sale, and the number of models included in each sale:

| Number models | Entry | Release | Sale | Models sold |
|---|---|---|---|---|
| 51 | Feb. 19 | Feb. 19 | Feb. 28<br>Mar. 7 | 22<br>9 |
| 24 | Feb. 25 | Feb. 26 | Feb. 28<br>Mar. 8 | 10<br>3 |
| 7 | Mar. 4 | Mar. 5 | Mar. 7 | 1 |
| 82 | | | | 45 |

The applicable parts of section 308 are as follows:

That the following articles, when not imported for sale or for sale on approval, may be admitted into the United States under such rules and regulations as the Secretary of the Treasury may prescribe, without the payment of duty under bond for their exportation within six months from the date of importation.

 *      *      *      *      *      *      *

(2) Models of women's wearing apparel imported by manufacturers for use solely as models in their own establishments, and not for sale.

With each entry Maurice Rentner filed an affidavit in which he stated under oath that he was a member of the firm of Maurice Rentner; that the firm were manufacturers of women's wearing apparel; that the merchandise covered by the entry—

are models of women's wearing apparel, imported by them solely as models for use in their establishment and will so be used; that they are not imported for sale or for sale on approval; and that the same will not be removed from their establishment for reproducing, copying, painting, or sketching by others, nor used in their establishment for such purposes except by them or their employees.

The bond for exportation as to each entry having been given, as already appears, thereupon each model covered by the respective entries was marked by means of a cord and seal as provided in the customs regulations for the purposes of identification, and the

models released to importer without payment of duty at the times stated in the foregoing tabulation. A special customs agent noticed shortly thereafter that one Russek was advertising a sale of original gowns on Fifth Avenue, New York City. Calling there, the agent ascertained that some or all of such gowns had been purchased from Rentner and, having with him the necessary identifying facts as to the importations, satisfied himself that they were part thereof Thereupon he called at importer's place of business and was there informed (of what he already knew), that some of the imported models had been sold to Russek. These facts were embodied in the special agent's report to the collector under date of March 21, 1925. It is conceded by importer's counsel here that the 45 models were sold to Russek on the dates shown in the tabulation; and that Russek's was a large retail store in New York City making a specialty of women's wearing apparel. It appears that the 27 models which were not so sold remained in importer's establishment and, presumably, were used for the purpose stated in the affidavits filed on entry. Importer asked the collector's permission to export them without the payment of duty within six months after importation but that officer, being of opinion that the entries were not made in good faith, and that the conditions under which the models had been released without the payment of duty had been violated, refused to permit the 27 models to be exported as requested, and assessed the statutory rates on the entire 82 models.

Importer actually exported the 27 models within six months from the date of importation. He protested the collector's assessment as to such models on the ground that they were not imported for sale or for sale on approval and were used as provided in the statute. He does not claim that the assessment of the 45 models was illegal but does claim that the 27 models were not dutiable and were entitled to be exported without payment of duty.

The United States Customs Court, in effect, held that in order to be entitled to the benefit of section 308, an importer must observe and comply with its provisions as to each article of an importation, and, in substance, found that importer in this case did not comply therewith, and, at the time these entries were made, did not intend so to do.

As we regard it this case presents two questions. The first is, Does the evidence support the finding of the court below that the importer did not at the time of importation and entry thereof intend to use the imported models as provided in section 308?

The purpose of the respective affidavits was to obtain a release of the importations without the payment of duty. To do that it was necessary to present to the collector such facts as would, *prima facie,* entitle importer to the release of the importations to him without

the payment of duty, and on their face the affidavits were sufficient therefor. The collector, however, could not know what would subsequently be done with the importations or whether the object of the statute would be accomplished and the declared purpose of the importer carried out. That could be determined only from subsequent events.

Maurice Rentner did not testify before the Customs Court and the only competent evidence as to his purpose and intent in importing these models is to be found in the respective affidavits, considered in connection with his subsequent actions concerning the models. We think the facts shown by the foregoing tabulation are eloquent and conclusive in support of the finding below. The three affidavits made in close succession show, apparently, that the entries were in compliance with section 308, but the tabulation tells a different story. Therefrom it appears that within six days he made the first two entries covering 75 models; that he sold 10 thereof within three days after they were entered and also sold 22 more within nine days from entry; that on March 4, notwithstanding this plain violation of the conditions under which the previously entered models had been delivered to him, he entered seven more models and made another like declaration of his intent, and that within four days thereafter he not only sold one of these but also sold 12 more of those covered by the two preceding entries. The entire tabulation also shows that out of the 82 models entered, which he had sworn were not for sale, or for sale on approval, 45 were sold under such circumstances that they could not have been used by him as models to any considerable extent, if at all, leaving only 27 models which could be used or were used as provided by the statute and stated in his affidavits. Unexplained, if explanation were possible, these facts raise an irresistible conviction in our minds, as they evidently did, not only in the mind of the collector but of the court below, that these entries were not made in good faith under the provisions of the section.

We do not overlook the fact that a male employee of importer testified that he bought these models abroad, for the purposes mentioned in section 308, and that they were imported pursuant thereto. He did not, however, make the entries or the affidavits and the issue is not as to his good faith but is only as to that of importer.

A female employee also testified that importer had no intention of selling any of the models at the time they were imported, but she was hardly the custodian of his intentions or able to disclose the same, sufficiently to refute the compelling inference arising from what already appears.

In connection with her testimony importer claims error below in the exclusion of certain offered evidence. She had testified that she was

present when the models were sold to Russek and that Rentner did not solicit the sale. Importer's counsel then offered to show by her that Russek's representative solicited the sale of the gowns by Rentner as a personal favor to Russek. The offered evidence was excluded. Counsel claim here that this was material on the issue of good faith. We hold otherwise. Rentner was the only person who knew why he so quickly abandoned his ostensible intention to use the models as the statute required. He may or may not have been influenced by the solicitation to sell. There was no proof that he was, or offer to show that he sold as a personal favor to Russek. It does not appear that Rentner was not available as a witness. Had he been called and permitted to testify as to the interview with Russek's representative when the sale was made, and an issue had arisen as to what took place thereat, the excluded testimony might have been admissible, but under the circumstances of this case it was not. It had no tendency to support a claim that Rentner was acting in good faith when the entries were made.

The second question is whether the fact that so many of these models were sold under the circumstances disclosed subjects to duty the 27 models which were not sold but which were used for the purposes contemplated by section 308 and exported within the six months. We think it does.

The provisions of the section are explicit. It first declares that articles to be entitled to free entry must not be imported for sale or for sale on approval and then that models like those here must be imported by manufacturers for use "solely as models in their own establishment and not for sale." In other words, the models must be used by importer as models for making wearing apparel and must not enter into the commerce of this country in competition with other wearing apparel. To permit the appellant to import in the manner shown 82 models, sell 45, and use 27 only for the purposes provided in the section is to allow him to defeat the very object of its enactment. To accomplish the obvious intent of Congress these importations should be treated as an entirety, and in such a case as this importer must be deprived of all benefit of the statute he has so flagrantly violated. He can not be permitted to enjoy its favor as to one-third of these models, when he has disregarded it as to two-thirds.

The tariff act of 1913, Section IV, J, subsection 4, which it is unnecessary to quote, contained provisions very like section 308 of the present act. The latter, however, rearranges the provisions of the former and amends it by providing that models of women's wearing apparel must be imported for use *solely* as models, thus emphasizing the congressional purpose respecting the same.

It is argued that in construing the earlier act we have already held that an importation of models like these may, for the purposes of

section 308, be segregated; that some may be allowed the benefit of the section while others may be disentitled thereto.

The following cases are referred to: *Louise & Co.* v. *United States,* 8 Ct. Cust. Appls. 430; *Grab Fashion Co. et al.* v. *United States,* 10 Id. 39; *Louise & Co. et al.* v. *United States,* 11 Id. 41; *Glickman* v. *United States,* 11 Id. 151. We have carefully examined each of these cases.

In the *Louise & Co.* case in the 8 Ct. Cust. Appls. the main question was whether the sale for export of an importation of models constituted a sale in this country, and therefore a violation of the statute. We held it did not because the models never came into competition with domestic goods of like character. But it was said in the opinion:

If the case were one in which the goods had not in fact been subjected to the use for which they were originally designed, namely, the use as models in the establishment of the importer, * * * the inference would be very strong, if not conclusive, that the goods were imported with the intent to make a sale and therefore for sale as contradistinguished from their use as models.

In the *Grab Fashion Co.* case, *supra,* it appeared that the model gowns were, in fact, imported with intent to rent or sell, accompanied with a coexistent intent to export at the close of the six months' period such as were not rented or sold, and to claim exemption from duty for such as were exported.

It was held that importer was not entitled to the benefit of the statute *as to any of the imported models.*

In the case of *Louise & Co. et. al.,* 11 Ct. Cust. Appls., *supra,* especially relied upon by importer, the following facts appear from our opinion in the case: There were two importers, one Louise & Co., and the other, Sirotta. Subsequent to the admission of the models, some were removed from importers' establishments for temporary use; some were held therein for more than six months after importation; some were sold. The collector ruled that the sale or removal of any of the models from importers' establishments for any use whatever was such a violation of the terms of the entry and the conditions of the bond as to render them all subject to duty. As to both the importers it appeared that they were manufacturers of women's wearing apparel and were thus far within the provisions of the act.

As to the Louise & Co. importation it appeared that some of the samples were sent by them to another concern for copying, because the importer lacked facilities therefor. Their dutiability was not questioned. Certain others were used for the purposes for which imported and were tendered for export within the six months' period. None of these had been offered for sale or used outside importer's establishment. Such models were, we held, entitled to free entry and exportation without the payment of duty.

One portion of Sirotta's importation was actually used by him as models exclusively, and prior to the expiration of the six months was

tendered for exportation, which was denied by the collector. Another portion thereof was retained in his possession for more than six months and therefore was not tendered for export within the time limit of the bond, and some of these were probably sold. It was held that the models which were actually used for the purposes for which imported and tendered for export within the six months' period were entitled to free entry and free export. All the others were held dutiable.

It will be noted that as to both these importations it was found, either expressly or by necessary implication, that *all* the models were imported with the honest intention of using them as provided in the statute. While the opinion warrants the conclusion that in such a case there may arise circumstances that will permit a segregation of the items, some of which will be dutiable and some not, yet there is nothing therein to justify the claim that in a case like the one at bar, where it is found that the entries were not made in good faith, the importer will be allowed the benefit of the statute as to any item of his importation. The opinion in the *Glickman* case is not opposed to this view.

Each case must, of course, be decided upon the issues and facts therein presented, but we are clear that in this case the judgment below ought to be and it is affirmed.