PELZ-GREENSTEIN Co. *v.* UNITED STATES (No. 3198)[1]

United States Court of Customs and Patent Appeals, November 25, 1929

*Gerry & Wakefield* (*James L. Gerry* and *Walter W. Graves* of counsel) for appellants.

*Charles D. Lawrence*, Assistant Attorney General (*Ralph Folks*, special attorney, of counsel), for the United States.

[Oral argument October 18, 1929, by Mr. Graves and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Appellant appeals from a judgment of the United States Customs Court overruling its protest against the action of the collector at the

[1] T. D. 43718.

port of New York in disallowing drawback on 183 dresses which were claimed to have been manufactured or produced in this country with the use of imported merchandise.

Drawback was claimed on 150 of a lot of 232 dresses covered by one entry and on 33 dresses of a lot of 41 covered by another entry. The dresses were entered under bond under section 308 of the Tariff Act of 1922, the pertinent portion of which reads as follows:

SEC. 308. That the following articles, when not imported for sale or for sale on approval, may be admitted into the United States under such rules and regulations as the Secretary of the Treasury may prescribe, without the payment of duty under bond for their exportation within six months from the date of importation:

\* \* \* \* \* \* \*

2. Models of women's wearing apparel imported by manufacturers for use solely as models in their own establishments, and not for sale;

Under Treasury regulations appellant gave bond for the exportation of the dresses within six months and in the bond provided that in event of failure of exportation the "obligors shall pay the duties which may be assessed upon the said article." The Treasury Department advised the collector to refuse drawback upon the drawback entries for the reason that—

The department holds that where model gowns are imported under the provisions of section 308 of the Tariff Act of 1922, are retained in this country after the six months' bonded period has expired, and are processed and subsequently exported, no drawback can be paid as it is presumed that such model gowns have been used for the purposes for which imported, and the importer is estopped from denying such use under the law.

The acceptance of duties, for a breach of the condition bond to export within six months in the case of articles imported under said section 308, can not be considered as fixing the character of the importation as such as would entitle it without doubt to drawback of 99 per cent of the duties paid. The fact that the department refers to the sum collected as duties can not alter the true character of the amount collected which is in satisfaction of the failure to comply with the provisions of the bond.

It appears that some of the gowns which were imported under consumption entries have been used as models in a manner similar to such importation under said section 308. As to these importations, the department holds that the mere occasional exhibition on a wax figure or a mannequin for the purpose of sale would not be such use as would prohibit the payment of drawback on such dresses if subsequently subjected to a *bona fide* manufacture or production under the drawback laws. If, however, importations under consumption entries are used in the same manner as section 308 describes, that is, either as samples used in taking orders or as models for copying or other exhibition, such use would render them second-hand material within the meaning of the drawback law and would bar the payment of drawback. [Italics quoted.]

The collector, without finding whether the goods had or had not been manufactured or produced with the use of imported merchandise, rejected the claim for drawback and stated that his action was in accordance with instructions from the department.

Section 313 of the Tariff Act of 1922 reads:

SEC. 313. That upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties, except that such duties shall not be so refunded upon the exportation of flour or by-products produced from imported wheat unless an amount of wheat grown in the United States equal to not less than 30 per centum of the amount of such imported wheat has been mixed with such imported wheat. Where two or more products result from the manipulation of imported merchandise, the drawback shall be distributed to the several products in accordance with their relative values at the time of separation. When the articles exported are manufactured or produced in part from domestic materials, the imported merchandise shall so appear in the completed articles that the quantity or measure thereof may be ascertained. The drawback on any article allowed under existing law shall be continued at the rate herein provided. The imported merchandise used in the manufacture or production of articles entitled to drawback of customs duties when exported shall, in all cases where drawback of duties paid on such merchandise is claimed, be identified, the quantity of such merchandise used and the amount of duties paid thereon shall be ascertained, the facts of the manufacture or production of such articles in the United States and their exportation therefrom shall be determined, and the drawback due thereon shall be paid to the manufacturer, producer, or exporter, the agent of either, or to the person to whom such manufacturer, producer, exporter, or agent shall in writing order such drawback paid, under such regulations as the Secretary of the Treasury may prescribe.

At the trial of the case below the papers in the case were introduced and no testimony was taken. The Government made no mention of any claim to the effect that the goods were not manufactured or produced with the use of imported merchandise. The issue there was confined to the question as to whether or not goods, imported under the provisions of section 308, might be the subject matter of drawback under section 313.

The court below, however, Mr. Justice Brown dissenting, held that the collector was right in declining to pay drawback for two reasons: First, that the importer had forfeited his rights under section 308 when he permitted the six months to expire, and that the goods could not be made the subject matter of drawback under section 313; second, that the goods were not shown to have been produced or manufactured in so far as they were only processed. The majority opinion further stated that the writer of the opinion offered protestant the privilege of having the case restored to the calendar that he might have opportunity to produce proof of manufacture and that such offer was declined.

We find it unnecessary to pass upon the question as to whether or not the goods were manufactured or produced with the use of imported merchandise, since we must agree with the position taken by the court below in the reason first assigned.

By section 308, Congress provided for the admission of a number of articles under bond without the payment of duty, if exported within six months from the date of importation. Congress intended that American citizens might have the advantage of certain uses of these articles temporarily without paying the duty upon the goods which would ordinarily be taxed, if imported for consumption and intended for entry into the commerce of the United States. It was specially provided in the section, however, that goods were not to be "imported for sale or for sale on approval," and that they were to be exported within six months. The Secretary of the Treasury was authorized to adopt rules and regulations which resulted in a regulation providing, as said before, for the payment of duties upon default.

It is argued by the importer that the goods had gone into commerce and that, since the duty on the goods had been paid, they took the same status as any other imported merchandise and could not be distinguished from any other kind of imported merchandise in the application of section 313, *supra*. The case of *Brown* v. *Maryland*, 12 Wheat. 419, 441, is cited and quoted. In that great case the State of Maryland passed a law providing for payment of a license fee by any one who sold imported merchandise. The decision (Chief Justice Marshall speaking for the court) held that "the object of importation is sale," that the motive in paying the duties was to obtain the privilege of selling, and that, therefore, the act was invalid since it was in conflict with the constitutional prohibition upon the States to lay a duty on imports. The provision of section 308, *supra*, was not to permit importations *for the purpose of sale* but, on the contrary, it specifically provided that the privilege was granted upon the condition that the merchandise was not for sale or for sale on approval.

The importer violated the spirit of the act in failing to export within six months. When the goods were brought into this country it was not intended that they should go into commerce, and they can not be made the subject matter of drawback under the provision of section 313 which provides for "articles manufactured or produced in the United States with the use of imported merchandise."

We do not think the merchandise in controversy was of the character of imported merchandise to which Congress referred in section 313. The generous privileges granted by Congress in the two sections, *supra*, were granted for special purposes, and, for the importer to be entitled to these privileges, he must bring himself not only within the letter but within the spirit of the provisions, and in determining whether or not he has done so, as applied to these two particular sections, it is the settled rule that any doubt in the construction of the same must be resolved in the favor of the Government. *Nestle's Food Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 451, T. D. 43199, and cases therein cited. A showing that the

importer violated his obligation and the spirit of the act when the goods were admitted into this country, and with the same goods claimed a special privilege under section 313, utterly fails to bring him within the scope of the privileges granted.

The judgment of the United States Customs Court is *affirmed.*

GARRETT and LENROOT, Judges, specially concurring: We concur the conclusion reached by the majority in the instant case without, however, joining in the reasons given in their opinion, but for the particular reason that we do not think the processes applied to the goods in question constituted such a manufacture as was contemplated by section 313 of the Tariff Act of 1922, the material portion of which reads:

SEC. 313. That upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise the full amount of the duties paid upon the merchandise shall be refunded as drawback, less 1 per centum of such duties    *    *    *

At the trial below, the papers in the case were introduced and no testimony taken, and the issue there was confined to the question as to whether or not goods, imported under the provisions of section 308, might be the subject matter of drawback under section 313.

The court below, however, Mr. Justice Brown dissenting, held that the collector was right in declining to pay drawback, resting its decision upon both the ground recited in the majority opinion of this court and upon that of this special concurrence.

Where an importer who has brought in merchandise under section 308, making bond therefor, and later has chosen to cancel the obligation of the bond by entering the merchandise for consumption and paying the duty thereon, elects, in good faith, really to manufacture that merchandise and export it, the question of whether he should be entitled to receive the drawback is one which we think should have fuller consideration than we have felt it necessary to give in the instant case, and we withhold an expression of opinion upon that phase of the controversy.

Upon the question of manufacture of the goods involved the court below found as follows:

These dresses were made in France and were imported in the finished state, and there is nothing in the record to indicate that as they were exported they were "articles manufactured or produced in the United States with the use of imported merchandise," which, under the drawback section of the said act of 1922, is absolutely necessary as an element of proof before drawback can be lawfully authorized by the Secretary of the Treasury or paid by the collector of customs.

It is true that upon the face of the drawback entries there is described a number of dresses of "Brenmoth finish" and another number of "Showerproof finish," and that in the form of an affidavit upon the face of each entry one Leon S. Pelz of the firm of Pelz-Greenstein Co., factors for Madison Textile Corporation, declares that the dresses described in the entries were manufactured by the

Criterion Piece Dye Works at New York, but it is apparent to this court from the official papers in the record that the merchandise as imported consisted of finished dresses, and that they were exported as dresses and were not, therefore, manufactured in the United States "with the use of imported merchandise," as provided in section 313, *supra*.

Offer was made by the writer of this opinion to counsel for protestant to restore the protest to the calendar that they might have opportunity to produce proof of manufacture, if any such proof could be produced, but the offer was declined, and the protest must therefore be overruled on the further ground that there is no competent evidence before this court that the exported dresses *were manufactured in the United States with the use of imported merchandise*. *Holt* v. *United States*, T. D. 42826, and *Rentner* v. *United States*, 15 Ct. Cust. Appls. 147, T. D. 42217.

This finding was entirely justified from the record. Some of the garments seem simply to have been sprayed with a solution of tartar emetic and camphor and others with a solution of acetic acid and formaldehyde, some solutions being also applied in vaporized form.

In our opinion these processes do not constitute the manufacturing process contemplated and intended by Congress in the drawback section 313, and for this reason, without more, we think the judgment of the court below should be *affirmed*.