CUNARD STEAMSHIP CO., NORTH GERMAN LLOYD *v.* UNITED STATES
(No. 3798)[1]

[1] T. D. 47605.

616

United States Court of Customs and Patent Appeals, March 4, 1935

*Barnes, Richardson & Halstead* (*Albert MacC. Barnes* and *Samuel M. Richardson* of counsel) for appellants.

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *William Whynman*, special attorney, of counsel), for the United States.

[Oral argument February 7, 1935, by Mr. Barnes and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division (Judge Cline dissenting), overruling two protests of appellants against the assessment of duty by the collector at the port of New York on two so-called ship models at 40 per centum ad valorem under paragraph 399 of the Tariff Act of 1922 as manufactures of metal. The protests claimed the models to be free of duty under paragraph 1620 of said act. Certain other claims in the alternative were made in the protests, but these were not urged before the trial court and are not urged here; therefore they will not be considered by us.

The pertinent provisions of said paragraph 399 are:

PAR. 399. Articles or wares not specially provided for, * * *; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 40 per centum ad valorem.

Said paragraph 1620 reads as follows:

PAR. 1620. Models of inventions and of other improvements in the arts, to be used exclusively as models and incapable of any other use.

The model covered by the protest of appellant Cunard Steamship Co. represents the external appearance of the steamship *Asia*, built by the Cunard Line in 1850. Said vessel went out of commission

about 1880. The model is about six feet long and eight inches wide, inclosed in glass and resting upon a rectangular wooden table. It was imported on January 23, 1930, and for about two months was displayed in the Pittsburgh office of the Cunard Line; it was then removed to New York and placed in the New York Museum of Science and Industry in the marine exhibit of that institution, and was there at the time of the taking of the testimony herein in January, 1933. This model had previously been imported in 1922 and admitted free of duty under the Tariff Act of 1913. It was afterwards exported, and the importation here involved is the second importation of the model.

The model covered by the protest of appellant North German Lloyd is a representation of the external appearance of the steamship *Bremen*, built upon a scale of 1 to 75 from the drawings of the *Bremen*. The model was built in the same yard as the steamship *Bremen* and was completed before the *Bremen* itself was delivered to the owners. The model is 149 inches long and 16 inches wide, and weighs over 2000 pounds. After importation it was placed in the corridor of the New York office of the North German Lloyd Line and there remained continuously to the time the testimony herein was taken.

It is conceded that neither of the models was imported to be used as models for the building of steamships, but it is asserted that they were imported to show improvements in the art of shipbuilding.

For the purposes of this case, we shall assume that the articles here in question are models within the meaning of said paragraph 1620, that shipbuilding is an art, and that these models illustrate improvements in such art. Therefore, the only question before us for determination is whether or not the models in question were imported "to be used exclusively as models" and were "incapable of any other use," and were therefore free of duty under said paragraph 1620.

Inasmuch as the models were classified by the collector as manufactures of metal dutiable under said paragraph 399, the presumption is that such classification was correct, and the burden was upon appellants to overcome such presumption and establish that the models were free of duty under said paragraph 1620.

There is no evidence as to the purpose for which the model of the *Asia* was imported. While, as hereinbefore stated, it was placed in the New York Museum of Science and Industry, there is no evidence that it was imported for that purpose; but, on the contrary, the evidence shows that before being placed in said museum it was for two months on display in the Pittsburg office of the Cunard Steamship Co. When the arrangement was made to place it in the New York museum does not appear.

With regard to the model of the *Bremen* there was testimony that it was built to show improvements in the art of shipbuilding. With respect to its use after importation, as hereinbefore stated, it was

placed on exhibition in the New York office of the appellant North German Lloyd.

William A. Drechsel, a witness on behalf of said North German Lloyd, testified upon cross-examination as follows:

R. X Q. You take that model after it is delivered and put it on display; is that right? That is its use, is it not?—A. Well, not entirely.

R. X Q. Well, ever since this particular model was constructed and delivered to your company, it was used for six months in Germany, and since then up to the present time it is still on display at your offices at 57 Broadway; is that right?—A. Yes, sir.

Upon redirect examination the said witness testified as follows:

R. Q. The purpose which you have just described, the purpose of the manufacture and importation of that model, is the only purpose, so far as you know, of manufacturing that model?—A. No, sir.

R. Q. I mean, the purpose of showing an improvement in the art of shipbuilding?—A. No, sir.

R. Q. What other purpose is there?—A. Well, it is in my opinion—the model is to show also—to give the architects, and so on, an opportunity to study the ship, the lines, the improvements.

R. Q. Is that the only purpose?—A. No.

R. Q. Together with the purpose that you have just described?—A. No. I think that the model is serving the purpose of decoration.

R. Q. Can you think of any other purposes?—A. Well, it is—the model is also, in my opinion, of constructive character for the employees.

In view of the fact that the model of the steamship *Asia* was placed upon display in the offices of the Cunard Line at Pittsburg for a period of two months after importation, we do not think that there is any difference with respect to the use of the two models here involved; we think that they were both imported for the purpose of display or exhibition, and that neither was imported for the purpose of building steamship hulls from such models.

The trial court in its decision relied upon our decision in the case of *United States* v. *American Brown Boveri Electric Corporation*, 17 C. C. P. A. (Customs) 329, T. D. 43776. In that case we held that certain miniature reproductions of goods invoiced as patterns of individual wheel drives, and used for advertising purposes alone, did not come within the provisions of said paragraph 1620. It was claimed that the imported articles were models of inventions and free of duty under said paragraph 1620. We there discussed and construed the language of said paragraph 1620, and came to the conclusion that the said imported articles were not such models of invention. In doing so, we expressed the idea that the language of that paragraph referred only to such models as were to be used exclusively as models from which something could be made. In the course of our discussion, we alluded to the cases of *Boas* v. *United States*, 128 Fed. 470, and *Hoe & Co.* v. *United States*, 141 Fed. 488 (affirmed in 147 Fed. 201). Those cases concerned importations under the tariff act of July 24, 1897, and in each case articles were

held to be within the language of paragraph 616 of the tariff act of July 24, 1897, the predecessor of said paragraph 1620. We called attention to the fact that in the tariff act of August 5, 1909, paragraph 629, which act was passed after the *Boas* and *Hoe* cases were decided, language was incorporated changing the paragraph and meeting the points decided in the two cases last cited.

Counsel for appellants now seek to avoid the effect of the *Brown Boveri* case, *supra*, by calling our attention to the fact that, after the passage of the act of August 5, 1909, the Board of General Appraisers, now the United States Customs Court, decided two cases involving ship models in which the board continued to follow the doctrine announced in the *Boas* and *Hoe* cases. Therefore counsel for appellants argue that these cases, having been so decided, must be considered to have been approved by the Congress in the enactments of the tariff act of October 3, 1913 and the Tariff Act of 1922, the paragraph relating to such models having been continued after the act of August 5, 1909, without change. In other words, it is said that, irrespective of the change in language of the statute, the decisions of the Customs Court following this act, and giving no regard to the difference in language, must be held to fix the law, on the doctrine of legislative ratification.

In our discussion in the *Brown Boveri* case, *supra*, in discussing the points there advanced, we observed that there was enough doubt and ambiguity about the statutory language that we might have recourse to the legislative history, and thereupon did discuss the same. However, as we now look at the matter, it is quite obvious that the matter might have been determined without such discussion. The *Boas* and *Hoe* cases had been decided. Thereafter the Congress had amended the statute in a way that clearly avoided the effect of such decisions. The language of the amended statute was plain and understandable. It recited that such models as might be brought into the country free of duty were those which were "to be used exclusively as models." There is no other meaning which can be given to such words except the ordinary meaning, which is that the imported goods must be used in the way mentioned in the paragraph, namely, as models; that is, as something from which something else may be made. This was the plain meaning of the statute as enacted, and as it still appears in paragraph 1620 now before us, and, without any reference to the congressional history, is amply sufficient upon which the *Brown Boveri* case might have been based.

The Congress having thus changed the statute, can it be said that, because the Board of General Appraisers thereafter rendered two decisions which did not take into consideration the changed statute, by the doctrine of legislative ratification this court must now disregard such change and reverse what we have said in the *Brown Boveri* case, *supra*?

We do not believe any such course is required. The doctrine of legislative ratification, like all other rules of construction, is invoked only when it is necessary to do so because of the ambiguity and un-certainty of the act which is being construed. *United States* v. *Guth Stern & Co., Inc.*, 21 C. C. P. A. (Customs) 246, T. D. 46777. Then it is used only as an aid to the court in determining the meaning of the statute. When statutory language is clear and unambiguous, it must be held to mean what it plainly expresses, and no room is left for construction. *Jackson* v. *United States*, 2 Ct. Cust. Appls. 70, T. D. 31629. As we now view it, there is no necessity for any such resort to rules of construction here. However, were it necessary to do so, we are not of opinion that legislative ratification may be said to exist under the particular facts here involved.

The first of the cases decided by the Board of General Appraisers, and called to our attention here, was decided May 27, 1912, and appears in T. D. 32584, 22 Treas. Dec. 981. All that was published was an abstract opinion stating that two ships' models, classified under paragraph 215 of the tariff act of August 5, 1909, were held free of duty under paragraph 629. The *Boas* case, and another case, were cited as authority. Certainly this case, published without opinion, cannot be held to convey any information to the legislative body which would affect the mind of the Congress in its subsequent enactment of this provision of law.

The other case cited by counsel was decided June 25, 1912, in T. D. 32681, Abstract 29147, 22 Treas. Dec. 1167. All that appears in the printed decision is that a protest was sustained, claiming a model of a steamship to be entitled to free admission under paragraph 629, tariff act of August 5, 1909, preceding abstract, No. 28747, being cited as authority. The opinion of the Board of General Appraisers in said Abstract 28747 was based upon Abstract 22523, in T. D. 30234, 18 Treas. Dec. 470. An examination of this latter abstract discloses that this case was decided under the said act of July 24, 1897, and therefore was governed by the law which existed prior to the change made in the said tariff act of August 5, 1909.

It is argued that these abstract decisions were brought to the attention of the Congress at the time of the consideration of what afterwards became the tariff act of October 3, 1913, in an appendix attached to the report of the Ways and Means Committee. We find, on reference to that report, that it is very voluminous and has attached thereto an appendix of 297 pages, containing, among other matters, notations of all cases decided under the various provisions covered in preceding tariff acts. All that appears in this appendix is the statement relative to Abstract 29147, "Protest sustained claiming a steamship model entitled to free admission under paragraph 629,

tariff act of 1909. Abstract 28747 (T. D. 32584) followed. (T. D. 32681.)"

There is nothing to indicate in these published abstracts that the point involved in the case at bar was involved or decided in those cases. A ship's model might come within the changed language of said paragraph 629 of the tariff act of August 5, 1909, "to be used exclusively as models," namely, to be used as a model for making something, as we have found such language to mean, in the *Brown Boveri* case, *supra*. It cannot be successfully contended, even if the doctrine of legislative approval is applicable, that there was legislative approval and ratification of a principle not involved in the two abstract decisions of the board, above mentioned. Legislative ratification extends only to the precise points judicially determined. *United States* v. *Lilly & Co. et al.*, 14 Ct. Cust. Appls. 332, T. D. 41970; *United States* v. *Office Français Du Tourisme*, 21 C. C. P. A. (Customs), 346, F. D. 46881; *American Shipping Co. et al.* v. *United States*, 22 C. C. P. A. (Customs) 72, T. D. 47064.

We think it proper to observe in this connection that the case of *Rentner* v. *United States*, 15 Ct. Cust. Appls. 147, T. D. 42217, not cited in the *Brown Boveri* case, *supra*, supports in principle the construction given in the latter case to the phrase "to be used exclusively as models." In *Rentner* v. *United States*, *supra*, there was involved the construction of a provision of section 308 of the tariff act of 1922 reading as follows:

Models of women's wearing apparel imported by manufacturers for use *solely as models* in their own establishments, and not for sale. (Italics ours.)

The opinion in that case stated:

The provisions of the section are explicit. It first declares that articles to be entitled to free entry must not be imported for sale or for sale on approval and then that models like those here must be imported by manufacturers for use "solely as models in their own establishment and not for sale." In other words, the models must be used by importer as models *for making wearing apparel* and must not enter into the commerce of this country in competition with other wearing apparel. * * * (Italics ours.)

Finally, appellants invoke what is claimed to be long administrative practice of classifying ship models as free of duty under the tariff acts of 1909, 1913 and 1922, extending over a period of nearly twenty years. The rule of administrative practice is a rule of construction which may be resorted to only when a statute is ambiguous, and what we have said with respect to the claimed legislative ratification of judicial decisions, and cases we have cited with respect thereto, are applicable in large measure to the rule of administrative practice. Moreover, even conceding that said paragraph 1620 is ambiguous, we do not think that any rule of administrative practice is shown by

the evidence requiring us to hold the models here involved to be free of duty under said paragraph 1620.

The testimony of two witnesses was introduced by appellants upon the question of administrative practice. Both of said witnesses were customs officials at the port of New York. Their testimony was to the effect that, from 1905 to the time of the promulgation of our decision in the case of *United States* v. *American Brown Boveri Electric Corp.*, *supra*, ship models entered at the port of New York were admitted free of duty; that this practice began under the tariff act of 1897 and continued under the tariff acts of 1909, 1913, and 1922, as aforesaid.

We find, however, no testimony as to the use of ship models so admitted free under said tariff acts, but it would appear that during said period it was the practice to admit free of duty at the port of New York all ship models regardless of use. We say this because apparently the customs officers testifying made no distinction between the provisions of the tariff act of 1897 with respect to models of inventions and of other improvements in the arts and the provisions of later tariff acts with respect to such models.

Of course we have not held, and could not hold, that ship models may not be admitted free of duty. Under our holding in the *Brown Boveri* case, *supra*, they are clearly entitled to free entry if exclusively used for the making or building of ships and are incapable of any other use.

Beginning with the tariff act of 1909, and extending to all subsequent tariff acts, the classification of models of inventions and of other improvements in the arts was a classification by use, and it was the duty of the customs officers in each case, before admitting ship models free of duty, to determine the use for which such models were imported. While the general presumption is that customs officers have performed their official duties, the evidence in the case at bar would indicate that the question of use for which ship models were imported was ignored at the port of New York, inasmuch as no distinction seems to have been made between importations under the tariff act of 1897 and importations under subsequent tariff acts.

It does appear that at the port of Baltimore certain ship models were in 1912 refused free entry, but upon protest free entry was accorded by the Board of General Appraisers. These cases have been hereinbefore referred to in this opinion, to wit, T. D. 32584, 22 Treas. Dec. 981, and T. D. 32681, 22 Treas. Dec. 1167.

If the customs officers at the port of New York admitted all ship models free of duty without regard to use, it was in clear violation of all tariff acts subsequent to the tariff act of 1897, and the practice so followed could have no bearing upon the construction of such later tariff acts with respect to ship models.

In the case of *Lloyd Co.* v. *United States*, 9 Ct. Cust. Appls. 280, T. D. 38217, this court said, speaking of administrative practice:

The testimony discloses the fact that for perhaps 20 years last past such importations as these have been held by the collector to be free of duty probably upon the grounds now urged by the appellant. We do not overlook the importance of this fact as an element in the case, but it should not lead us to constrain the collector to continue a course which we regard as plainly contrary to the provisions of the act. *Pacific Creosoting Co.* v. *United States* (1 Ct. Cust. Appls., 312; T. D. 31407).

We express no opinion as to whether evidence of administrative practice at the port of New York is sufficient to establish, *prima facie*, a general administrative practice of the customs laws.

After full consideration of appellants' contentions, we adhere to our construction of said paragraph 1620 in the *Brown Boveri* case, *supra*, and we agree with the trial court that the evidence in this case does not establish that the models here in question were imported to be used exclusively as models.

For the reasons stated, the judgment appealed from is *affirmed*.

BLAND and GARRETT, Judges, dissent.