ARMAND SCHWAB & CO., INC. *v.* UNITED STATES (No. 4480)[1]

United States Court of Customs and Patent Appeals, January 4, 1945

*Brooks & Brooks* (*Frederick W. Brooks* of counsel) for appellant.
*Paul P. Rao,* Assistant Attorney General (*Joseph F. Donohue* of counsel), for the United States.

[Oral argument December 5, 1944, by Mr. Brooks and Mr. Donohue]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This appeal involves the proper classification of certain so-called leghorn straw hats imported from Italy by appellant.

The Collector of Customs at the port of New York classified the hats under paragraph 1504 (b) (2) and assessed them with duty at 25 per centum ad valorem and 25 cents per dozen. Appellant protested the classification, claiming that the hats were not bleached and therefore were dutiable at only 25 per centum ad valorem. The pertinent portion of the paragraph reads as follows:

PAR. 1504. * * * (b) Hats, bonnets, and hoods, composed wholly or in chief value of straw, chip, paper, grass, palm leaf, willow, osier, rattan, real

---

[1] C. A. D. 296.

horsehair, cuba bark, ramie, or manila hemp, whether wholly or partly manufactured:

> (1) Not blocked or trimmed, and not bleached, dyed, colored, or stained, 25 per centum ad valorem;
>
> (2) not blocked or trimmed, if bleached, dyed, colored, or stained, 25 cents per dozen, and 25 per centum ad valorem; * * *.

The case was tried before the United States Customs Court, Second Division, which held the merchandise to be bleached and overruled the protest. Hence this appeal.

It appears that the straw of which the hats are made is manipulated entirely by hand until the hats are completed. The work of forming the straw into the articles is done by peasants in Tuscany. The straw in the hats is usually of different ages, the older straw being darkened and spotted, and the hats become dirty and stained in the making.

After they are formed, in order to take away the dirt and spots the articles are subjected to a process of being washed with potash, and when half dry are placed in a sulfur vapor. They are then washed with bicarbonate of soda and while still damp are again placed in sulfur vapor. The alkaline substance remaining in the hats after the washing is removed, it is said, by neutralization with "Sale di Acetosella" which was testified to be oxalic acid. The foregoing process is repeated until a desired uniformity of color is obtained in the article, in this case a so-called natural leghorn color.

There is no dispute as to the treatment given the hats. Neither does appellant contend that the hats are not lightened in color by reason of the treatment. Of course this necessarily follows because not only is the dirt removed but also the dark spots and dark colors present in the straw.

The appellant contended below, as it contends here, that the hats are not bleached, for the reason that bleaching, it argues, consists in so decolorizing as to bring the article to a whiteness which may not necessarily be pure white but is practically so.

Appellee contends that the articles are bleached for the reason that they have been subjected to the action of a bleaching agent (sulfur vapor, which the record shows to be sulfur dioxide) which removes the color from the straw, and results in a uniform shade.

The evidence is all to the effect that the articles are lightened in color by reason of the process, and therefore the principal question to be decided here is whether bleaching means decolorizing to substantial whiteness or whether the articles are bleached because color has been taken from them to a lesser degree.

Both parties cite dictionary definitions of the verb "bleach." We do not deem it necessary to repeat those definitions here, because they are all to the effect that to bleach is to make white, or whiten, or to remove color from an article.

While it is not disputed that sulfur dioxide is a bleaching agent,

appellant contends it is not so used but is for the purpose of preventing mildew and destroying straw insects or larvae that may infest the straw. Seemingly appellant contends that any bleaching in the process is merely incidental. In passing, it may not be amiss to observe that oxalic acid is likewise a well-known bleaching agent.

. Much of the evidence on behalf of appellant is that the involved articles could not be sold, nor would they be accepted, as bleached hats.

No attempt was made to establish commercial designation and it is not contended that the common meaning of the term "bleached" is any different from such designation.

There can be no question but that the hats were subjected to the action of bleaching agents. They were not bleached white, it is true, but the colors in the straw which were present before the hats were processed were removed. There is no degree of bleaching set out in the paragraph, and therefore the removal of color to any substantial degree must be considered as coming within the common meaning of the term "bleached."

In the case of *United States* v. *Armand Schwab & Co., Inc., et al.*, 30 C. C. P. A. (Customs) 72, C. A. D. 218, cited by appellant, the involved merchandise consisted of hats composed of manila hemp imported from China. The collector there, as here, assessed them for duty as hats, bleached, and the importers protested, claiming, as here, that the hats were not bleached. It appeared that after the hats were made they were so filthy that they were washed by being placed in tubs of boiling water with powdered soap, where they remained for 10 or 12 hours. They were then either partially or wholly dried, starched, and ironed, and in that condition imported. The testimony there showed that that treatment did not take the place of any of the steps in bleaching which might have to be done in the United States, and even though there might have been incidental removal of color accomplished by the action of the soap its principal purpose and effect was to remove the accumulated filth. In this case not only is filth removed from the articles by washing, but there is a substantial degree of bleaching.

There is nothing in the *Armand Schwab* case, *supra*, to sustain appellant's contention. In fact we stated there that "We do not wish to be understood as holding, however, that hats which have been advanced in condition for their intended use by a bleaching process were not intended by the Congress to be included within paragraph 1504 (b) (2)."

The hats here involved certainly have been advanced in condition, and no further bleaching is necessary or desirable to render them ready for use as natural leghorns. While the decision in the *Armand Schwab* case, *supra*, does not control here, nevertheless, what was said there rather supports the contention of appellee.

Appellant cites the cases of *Donat & Co.* v. *United States*, 9 Ct. Cust. Appls. 162, T. D. 37997; *United States* v. *Arnhold & Co., Inc., et al.*, 27 C. C. P. A. (Customs) 135, C. A. D. 74; and *Absorbo Beer Pad Co., Inc.* v. *United States*, 30 C. C. P. A. (Customs) 24, C. A. D. 209, as sustaining its position on the issue of bleaching. It states that the hats in the *Donat* case were held to be not "blocked," that the dogskins in the *Arnhold* case were "undressed," and that the pulpboard in the *Absorbo Beer Pad* case was not "embossed," all "in the Tariff sense."

The basic rule that tariff statutes are to be interpreted in accordance with the ordinary meaning of their terms unless commercial designation be shown is not changed by the principles announced in those cases. The tariff sense of a term is its ordinary meaning unless commercial designation is established, or unless the intention of Congress is otherwise expressed.

Appellant argues in its brief that the term "bleached" as it appears in the involved paragraph applies more to "the effect produced, rather than in the means of producing that effect," but it is not necessary to consider this argument for the reason that the hats themselves together with other exhibits of old and new straw demonstrate that the hats are bleached.

Appellant also cites legislative history as sustaining its contention. It quotes from a brief filed with the Committee on Ways and Means of the House of Representatives wherein the industry sought a further duty of 25 cents per dozen on bleached hats for the reason that chemicals used in a bleaching operation amounted to 50 per centum of the cost. We do not see wherein such legislative history supports appellant's contention The hats here were treated with chemical bleaching agents to the extent necessary for their ultimate use. Congress has placed a specific duty of 25 cents per dozen on hats, if bleached. The mere fact that such a duty was requested is no indication that Congress intended that hats such as those involved here should be classified as hats, not bleached.

Appellant assigns error by the trial court "in not finding and holding that hats subjected to the same character of treatment have been classified as unbleached by long continued customs practice." There is no mention in the decision of the trial court as to whether or not such contention was made at the trial, and there is nothing in the briefs of either of the parties to indicate that such contention was there made. However, we will assume for the purpose of this decision that it was.

To support its contention of that alleged error appellant has cited T. D. 30626 (1910) in which the Treasury Department held that braids made of straw fumigated with sulfur for drying and the prevention of spotting were not dutiable as bleached straw braids for the reason that the treatment thereof by fumes of sulfur was

necessary to prevent mildewing in transit and that such fumigation did not bleach the material to an appreciable extent. Appellant has made no argument in his brief as to the applicability of that decision and it will be observed that the fumigation there did not [bleach the material appreciably while here there is a clear and distinct bleaching.

On this contention it is further stated in the brief of appellant that articles such as here involved were classified as not bleached from 1910 to 1936, which period, of course, would include most of the life of the tariff act of 1909, and the tariff acts of 1913, 1922, and 1930. Appellant makes no comment and gives no reasoning in its brief as to why such long-continued administrative practice should impel a reversal of the judgment. While long-continued administrative practice has been held by this and other courts to be entitled to great weight, nevertheless, it is well-settled law that such rule of construction may not be invoked where the statute itself, as here, is clear and unambiguous. *Lloyd Co.* v. *United States*, 9 Ct. Cust. Appls. 280, T. D. 38217; *Houghton* v. *Payne*, 194 U. S. 88.

The judgment of the United States Customs Court is *affirmed*.